**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELADIA DUCHIMAZA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>NIAGARA BOTTLING, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Eladia Duchimaza ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge, against Defendant Niagara Bottling, LLC ("Defendant").

**NATURE OF THE ACTION**

1. This is a class action lawsuit regarding Defendant's manufacturing, distribution, marketing and sale of Defendant's bottled water Products labeled as "100% Recyclable" on behalf of a class of purchasers of the Products[1] in the State of New York.

2. Recycling is "the process of collecting and processing materials that would otherwise be thrown away as trash and turning them into new products."[2]

3. Plastic waste is an increasingly dire international problem. Nearly 90% of plastic waste is not recycled. Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12

[1] The following brands of bottled water are referred to herein as the "Products": Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Market Essentials.
[2] United States Environmental Protection Agency, *Recycling Basics*, https://www.epa.gov/recycle/recycling-basics (last accessed July 14, 2021).

million tons of plastic enters the ocean each year.[3] As consumers have become increasingly aware of the problems associated with plastic pollution, many consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

4. Recognizing consumer concerns regarding plastic pollution and excessive plastic waste generation, many corporations are making commitments to make their products recyclable, reusable, or compostable.[4] In fact, in 2019, the American Beverage Association launched the "Every Bottle Back" Initiative, which claims to have "carefully design[ed] [] plastic bottles to be 100% recyclable, including the caps."[5]

5. However, despite their labeling to the contrary, the plastic bottles sold by Defendant are not "100% Recyclable" because: (1) the propropylene ("PP") bottle caps and the biaxially oriented polypropylene ("BOPP") plastic labels on the bottles are not recyclable and cannot be processed into usable material; (2) at least 28% of the polyethylene terephthalate ("PET") bottles and high-density polyethylene ("HDPE") bottle caps[6] sent to recycling centers are lost in processing or are contaminated and thus end up in landfills or are burned; and (3) domestic recycling facilities only have the capacity to process approximately 22.5% of the PET and HDPE consumed in the United States.

6. Thus, only some PET and HDPE plastic bottles and jugs can be legitimately labeled

---

[3] Nick Young, How does plastic end up the ocean?, https://www.greenpeace.org/aotearoa/story/how-does-plastic-end-up-in-the-ocean/ (last accessed July 15, 2021)

[4] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 4.

[5] American Beverage Association, https://www.innovationnaturally.org/every-bottle-back/ (last accessed July 14, 2021).

[6] Niagara Bottling Co., https://www.niagarawater.com/faq/ ("All of our bottles are produced using PET (polyethylene terephthalate) plastic and High-Density polyethylene (HDPE) caps.") (last accessed July 16, 2021).

as recyclable in the U.S. today.[7] As a result, the Products are not "100 % recyclable" as Defendant claims.

7. Defendant knows that the Products typically end up in landfills or incinerated and are unsuitable for recycling. Thus, Defendant's representations that the Products are "100% Recyclable" are material, false, misleading and likely to deceive members of the public.

8. In representing that the Products are "100% recyclable," Defendant violated the consumer protection laws of New York by engaging in affirmative acts and omissions which were misleading and stand outside the norm of reasonable business practice in Defendant's practices will victimize the average consumer. Had Defendant not misrepresented that the Products were "100% recyclable," and/or failed to omit material facts regarding the recyclability of the Products, Plaintiff would not have paid the same amount for the Products. Stated another way, Plaintiff paid a premium price for the Products as a result of Defendant's affirmative acts and/or omissions in an amount to be determined at trial.

9. Plaintiff asserts claims on behalf of herself and a class of all persons in the State of New York who purchased the Products for violation of New York General Business Law ("G.B.L.") §§ 349 and 350, *et seq.*, fraud, negligent misrepresentation, and unjust enrichment.

**PARTIES**

10. Plaintiff Eladia Duchimaza is a resident of New York, New York. Ms. Duchimaza has purchased numerous multi-bottle packs of Defendant Niagara's Kirkland bottled water, with her most recent purchase being in July 2021. Ms. Duchimaza made these purchases in-store at a Costco store located at 517 E. 117th Street, New York, NY 10035. When purchasing the Products,

[7] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 4.

Ms. Duchimaza reviewed the accompanying labels and disclosures, and understood them as representations by Defendant Niagara that the Products were, in fact, 100% recyclable. Ms. Duchimaza relied on these representations to her detriment in deciding to purchase the Products manufactured by Defendant Niagara in that she would not have purchased the Products from Defendant on the same terms if she had known that they were not, in fact, 100% recyclable. Ms. Duchimaza reasonably believed, based on Defendant Niagara's representations, that the entirety of the bottle (including the cap and label) was recyclable when disposed of in a recycling bin. Ms. Duchimaza in fact attempted to recycle the bottles she purchased by placing them in her recycling bin for pickup. Ms. Duchimaza paid a premium price for the Products quantified as the difference in value between the Products as represented versus the value of the Products received (the value of the Products received was less than the value if the Products were, in fact, 100% recyclable). Because of the aforementioned facts, Plaintiff Duchimaza will be unable to rely on Defendant Niagara's 100% recyclable claim in the future unless appropriate injunctive relief is entered. Plaintiff Duchimaza desires to purchase water bottles from Defendant Niagara that are, in fact, 100% recyclable, but cannot rely on Defendant Niagara's representations regarding recyclability. As such, Plaintiff Duchimaza is likely to suffer future harm absent injunctive relief compelling Defendant Niagara to ensure their Products are 100% recyclable or compelling Defendant Niagara to remove such misleading representations from the packaging so that Plaintiff Duchimaza may properly value the Products.

11. Defendant Niagara Bottling, LLC ("Niagara") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Ontario, California. Defendant Niagara manufactures, markets, and sells beverages, including bottled water, in the United States under several brand names, including Niagara, Costco Kirkland, Save

Mart Sunny Select, and Save Mart Market Essentials.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contracts with the State of New York, and because Plaintiff purchased the Products in New York.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff purchased and used the Products in this District.

**FACTUAL ALLEGATIONS**

15. The United States is grappling with two major plastic waste problems: plastic pollution and the generation of excessive plastic waste that is disposed of in landfills or incinerated with significant carbon emissions.

16. The sheer amount of plastic waste accumulating in the environment is accompanied by an array of negative side effects. For example, plastic debris is frequently ingested by marine animals and other wildlife, which can be both injurious and poisonous. Floating plastic is also a vector for invasive species, and plastic that gets buried in landfills can leach harmful chemicals into ground water that is absorbed by humans and other animals. Plastic litter on the streets and

in and around parks and beaches also degrades the quality of life for residents and visitors. As a result, consumers actively seek out products that are compostable, recyclable, or reusable to prevent the increase in global waste and to minimize their environmental footprints.

17. Historically, recycling facilities in the United States shipped plastic scrap to China for recycling. But tons of that shipped plastic waste was never recycled. Instead, it was burned or entered into waterways, where it was carried into the ocean.[8] Despite this, due to low-cost shipping and labor, the United States became reliant on China to accept plastic materials collected by U.S. municipal systems.[9]

18. However, in 2018, China implemented a new scrap-import policy, restricting imports of plastic waste and other materials from other countries, including the United States. This had a significant and overwhelming effect on the U.S.'s limited municipal recycling collections systems, commonly referred to as municipal recycling facilities ("MRFs").[10]

19. MRFs collect recyclable waste, often through curbside pickup. The recyclable waste is then sorted and sold to facilities that sort and process the material into clear flake material that can be sold and used to make new plastic items.

20. Due to China's scrap-import policy, MRFs, including those in New York, had to make numerous changes to municipal recycling programs, with many deciding to longer accept certain plastics, and employing tighter quality standards.[11] Thus, as a result of these market conditions, many cities and counties around the country are no longer recycling many types of

---

[8] Christopher Joyce, *Where Will Your Plastic Trash Go Now that China Doesn't Want it?*, www.NPR.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it (last accessed July 16, 2021).

[9] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 6.

[10] *Id.*

[11] WasteDive, *How Recycling Has Changed In All 50 States*, https://www.wastedive.com/news/what-chinese-import-policies-mean-for-all-50-states/510751/ (last accessed July 16, 2021).

plastic dropped into recycling bins. Instead, many types of plastic are being landfilled, burned, or stockpiled.[12] Acceptance by an MRF is therefore not proof that a product will be recycled.

21. Each of the Products manufactured by Defendant has three basic plastic components: the bottle, the bottle cap, and the label that is wrapped around the bottle. The bottles are made of polyethylene terephthalate (PET, #1 plastic), the plastic most commonly used in single-use plastic water bottles.[13] The Products' bottle caps are made of polypropylene (PP, #5 plastic) or high-density polyethylene (HDPE, #2 plastic). Finally, the Products' labels are made from biaxially oriented polypropylene (BOPP), a form of PP.

22. Throughout the class period, Defendant has consistently marketed on the Products' packages that they are "100% Recyclable":




[12] The Guardian, *Americans' Plastic Recycling is Dumped in Landfills, Investigation Shows*, https://www.theguardian.com/us-news/2019/jun/21/us-plastic-recycling-landfills (last accessed July 16, 2021).
[13] PathWater, *PET, the "Safe" Plastic*, https://drinkpathwater.com/blogs/news/is-pet-plastic-bpa-free#:~:text=PET%20plastic%20(polyethylene%20terephthalate)%20is,and%20inability%20to%20process%20stress (last accessed July 16, 2021).




23. Greenpeace USA, a non-profit environmental organization, recently conducted a comprehensive survey of plastic product waste recycling and reprocessing in the United States in order to determine the legitimacy of "recyclable" claims on labels for consumer plastic products.

24. It is true that PET and HDPE are widely considered to be the "most recyclable" forms of plastic. However, Greenpeace's survey found that as of 2017, United States domestic MRFs only have the capacity to process into plastic resin approximately: (i) 22.5% of the total post-consumer PET plastic waste generated; and (ii) 12% of the total post-consumer HDPE plastic waste generated.[14]

25. Moreover, due to contamination and processing losses, about a third of the collected PET and HDPE material processed by MRFs cannot be converted into "clean flake," and is instead, landfilled and incinerated.[15] Thus, the Products' PET bottles and HDPE bottle caps are not "100%

---

[14] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 10.

[15] Jan Dell, Plastic Pollution Coalition, *Six Times More Plastic Waste is Burned in U.S. than is Recycled*, https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled (Last accessed July 16, 2021).

Recyclable" as claimed by Defendant.

26. Furthermore, PP and BOPP plastics, the materials used to make the Products' bottle caps and film labels, respectively, are widely considered to be among the *least* recyclable plastics.[16] [17] Thus, acceptance by an MRF of PP and BOPP plastics is not proof that the materials will actually be recycled into a new product.[18] Instead, the majority of PP and BOPP sent to recycling facilities is incinerated or sent to landfills. Accordingly, the Products' caps and labels are not "100% Recyclable."

27. Pursuant to the Guides for use of Environmental Marketing Claims published the Federal Trade Commission (the "Green Guides"), "[it]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a).

28. Thus, "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b).

29. The Green Guides are clear: "if any component significantly limits the ability to

---

[16] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 22.

[17] Fast Company, *Evian's New 100% Recycled Plastic Bottle Comes Without a Label*, https://www.fastcompany.com/90524283/evians-new-100-recycled-plastic-bottle-comes-without-a-label ("Labels [] are made from a different type of plastic than the PET used in bottles. At recycling facilities, bottles are separated from labels and from caps, which are made from a third type of plastic. While labels are technically recyclable, some facilities don't have the infrastructure to handle it; others don't bother.") (Last accessed July 16, 2021).

[18] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 10.

recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable material, but because of fits shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable." 16 C.F.R. § 260.12(d).

30. In promulgating the current recycling definition, the Federal Trade Commission ("FTC") clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product *will be converted into, or used in, another product or package*. *See* 63 Fed. Reg. 84 11 24247 (May 1, 1998) (emphasis added). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id*., at 24243.

31. Seeking to take advantage of consumer's concerns, Defendant markets and sells bottled water as "100% recyclable," when the bottles cannot, in fact, be recycled as packaged. Defendant's actions violate the FTC Green Guide regulations, and by extension, New York law.

32. New York law specifically incorporates the FTC Green Guides. For example, 6 NYCCR § 368.1 states: "The purpose of this Part is to establish official recycling emblems for voluntary use and establish standards to be applied for the use of such emblems. The use of the terms 'recycled' 'recyclable' and 'reusable' independent of the emblem must be in conformance with the Federal Trade Commission's 'Guides for the Use of Environmental Marketing Claims' published in 16 CFR Part 260 (1992) or they are in violation of this regulation." *See also* 6 NYCCR § 368.5 (explaining that "no person shall use the terms 'recycled,' 'recyclable' or 'reusable' for the promotion or advertisement of a package or product unless the term is used in conformance with the Federal Trade Commission's 'Guides for the Use of Environmental Marketing Claims' published in 16 CFR Part 260 (1992)").

33. This Complaint therefore seeks to remedy Defendant's deceptive and misleading

business practices with respect to the advertising, marketing and sales of the Products as "100% recyclable," when, in fact, they are not.

34. Plaintiff purchased the Products in reliance on Defendant's false representations on the labels of the Products that the Products are "100% recyclable." If Plaintiff had known that the Products were not 100% recyclable, Plaintiff would not have purchased the Products on the same terms.

## CLASS ALLEGATIONS

35. Plaintiff seeks to represent a class defined as all persons in the State of New York who purchased the Products (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and anyone who purchased the Products for resale. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

36. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

37. **Numerosity.** The members of the Class are geographically dispersed throughout the State of New York and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and/or third-party retailers and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

38. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

(a) Whether Defendant's Products are "100% Recyclable;"

(b) Whether Defendant misleadingly and/or deceptively represented that the Products are "100% Recyclable" and/or failed to inform class members that the Products are not "100% Recyclable";

(c) Whether Defendant's labeling, marketing, and promotion of the Products is false and misleading;

(d) Whether Defendant's conduct was fraudulent and/or amounts to negligent misrepresentation; and,

(e) Whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

39. **Typicality.** The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

40. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

41. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**COUNT I**

**Violation of New York G.B.L. § 349 (on behalf of Plaintiff and the Class)**

42. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

43. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

44. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

45. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

46. Plaintiff and members of the Class are consumers who purchased products from Defendant for their personal use.

47. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products are "100% Recyclable", when in fact the Products are not completely recyclable.

48. The foregoing deceptive acts and practices were directed at consumers.

49. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same.

50. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

51. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the Class have sustained from having paid for and used Defendant's Products.

52. As a result of Defendant's violations, Plaintiff and members of the Class have suffered damages because they paid a price premium for the Products based on the materially misleading representation that the Products were "100% Recyclable," when in fact they are not.

53. On behalf of herself and other members of the Class, Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation of New York G.B.L. § 350 (on behalf of Plaintiff and the Class)**

54. Plaintiff hereby incorporates the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

56. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

57. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

58. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

59. These misrepresentations have resulted in consumer injury or harm to the public interest.

60. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 by misrepresenting that the Products are "100% Recyclable," when in fact they are not.

61. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

62. This misrepresentation has resulted in consumer injury or harm to the public interest.

63. As a result of Defendant's violations, Plaintiff and members of the Class have suffered damages because they paid a price premium for the Products based on the materially misleading representation that the Products were "100% Recyclable," when in fact they are not.

64. On behalf of herself and the members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, three times actual damages and reasonable

attorneys' fees.

**COUNT III**
**Fraud (on behalf of Plaintiff and the Class)**

65. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

67. As discussed above, Defendant misrepresented on the Products' labeling that it was "100% Recyclable," when in fact they are not.

68. Defendant also engaged in material omissions because they knew, or reasonably should have known, that the Products were not, in fact, 100% recyclable.

69. The false and misleading representations and omissions were made with knowledge of their falsehood. Nonetheless, Defendant continues to sell their non-recyclable Products to unsuspecting consumers.

70. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class to purchase the Products.

71. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class because Plaintiff and Class members would not have purchased the Products on the same terms if they had known the truth about the Products.

72. Plaintiff and Class members are entitled to damages, punitive damages, and other legal and equitable relief as a result of Defendant's conduct.

**COUNT IV**

**Breach of Express Warranty (on behalf of Plaintiff and the Class)**

73. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

74. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

75. In representing that the Products were "100% Recyclable," Defendant negligently provided false information to Plaintiff and Class members because the Products were not, in fact, 100% Recyclable.

76. On July 23, 2021, Plaintiff provided Defendant with timely notice of this claim by letter that complied in all respects with U.C.C. § 2-607(3)(a). *See* **Exhibit A**.

77. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were "100% Recyclable" when in fact the Products were not, in fact, "100% Recyclable."

78. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the New York Subclass were damaged because they paid a price premium for the Products based on the materially misleading representation that the Products were "100% Recyclable," when in fact they are not.

79. As s result of Defendant's conduct, Plaintiff and members of the Class are entitled to damages, as well as any other appropriate relief.

**COUNT V**
**Unjust Enrichment (on behalf of Plaintiff and the Class)**

80. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

81. Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

82. Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

83. Defendant has knowledge of such benefits.

84. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products. Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were "100% Recyclable."

85. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h) For an order awarding Plaintiff and the Class their reasonable attorney's fees, expenses, and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: July 28, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *\/s/ Andrew A. Obergfell*
Andrew Obergfell

Andrew Obergfell (NY Bar No. 5458906)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: aobergfell@bursor.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller (*Pro hac vice* app. forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: rmiller@bursor.com

*Attorneys for Plaintiff*