**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELADIA DUCHIMAZA, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

NIAGARA BOTTLING, LLC,

Defendant.

Case No. 21-cv-06434-PAE

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

DORSEY & WHITNEY LLP

51 W. 52nd Street
New York, New York 10019
(212) 415-9200

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

FACTUAL ALLEGATIONS ..... 2

ARGUMENT ..... 6

I. Plaintiff Lacks Article III Standing. ..... 7

A. Plaintiff Lacks Standing Because She Cannot Establish Injury. ..... 7

B. Plaintiff Lacks Standing to Seek Injunctive Relief. ..... 10

C. Plaintiff Lacks Standing With Respect to Products Other Than Kirkland Signature Water. ..... 13

II. The Complaint Fails To State Actionable Claims. ..... 15

A. Plaintiff Fails To State a Plausible Claim Under New York's Consumer Protection Statutes. ..... 15

B. Niagara's Compliance with the Green Guides Bars Plaintiff's Claims Under New York's Consumer Protection Statutes ..... 17

C. Plaintiff Fails To Allege a Viable Claim for Damages. ..... 19

D. Plaintiff's Claim for Fraud Should Be Dismissed for Failure to Satisfy Rule 9(b). ..... 20

E. Plaintiff Fails to State a Claim for Breach of Express Warranty ..... 21

F. Plaintiff's Unjust Enrichment Theory Fails to State a Claim ..... 23

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Allee v. Medrano*, 416 U.S. 802 (1974) .......... 13

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003), *aff'd*, 561 U.S. 247 (2010) .......... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 7

*Ault v. J.M. Smucker Co.*, 2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) .......... 21

*Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018) .......... 22

*Belcastro v. Burberry Ltd.*, 16-CV-1080 (VEC) (S.D.N.Y. Feb. 23, 2017) .......... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 7

*Berni v. Barilla S.P.A.*, 964 F.3d 141 (2d Cir. 2020) .......... 10, 11

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573 (2d Cir. 2006) .......... 23

*Buonasera v. Honest Co.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016) .......... 13

*Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 U.S. Dist. LEXIS 33809 (S.D.N.Y. Mar. 16, 2015) .......... 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005) .......... 12

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) .......... 20

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 10

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) .......... 16

*Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120 (E.D.N.Y. 2018) .......... 19

*Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451 (KMK), 2021 U.S. Dist. LEXIS 148982 (S.D.N.Y. Aug. 9, 2021) .......... 22

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. App. 2012) .......... 23

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411 (2d Cir. 2015) .......... 6

*DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601 (S.D.N.Y. 2012) .......... 21

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) .......... 4

*DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27 (2d Cir. 2014) .......... 13

*Doss v. General Mills, Inc.*, 816 F. Appx. 312 (11th Cir. 2020) .......... 9

*Ebin v. Kangadis Food Inc.*, 2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013) .......... 23

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) .......... 16

*Ehlers v. Ben & Jerry's Homemade*, Inc., No. 2:19-cv-00194, 2020 U.S. Dist. LEXIS 80773 (D. Vt. May 7, 2020) .......... 22

*Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS)(AKT), 2015 U.S. Dist. LEXIS 63464 (E.D.N.Y. May 14, 2015) .......... 11, 13

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) .......... 15, 16

*Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300 (GLS/DEP), 2019 U.S. Dist. LEXIS 48595 (N.D.N.Y. Mar. 25, 2019) .......... 8

*Hart v. BHH, LLC*, 2016 U.S. Dist. LEXIS 59943 (S.D.N.Y. May 5, 2016) .......... 13

*Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535 (W.D.N.Y. 2018) .......... 12

*Hubbard v. GMC,* 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996) .......... 22

*In re Lyman Good Dietary Supplements Litig.,* No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668 (S.D.N.Y. Aug. 6, 2018) .......... 20

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016) .......... 19

*Jessani v. Monini N. Am., Inc.*, 744 Fed. Appx. 18 (2d Cir. 2018) .......... 16

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) .......... 20

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) .......... 11, 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 7, 10

*M.E.S., Inc. v. Snell*, 712 F.3d 666 (2d Cir. 2013); .......... 6

*Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.,* 631 F.3d 57 (2d Cir. 2011) .......... 7

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2011) .......... 9

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) .......... 20

*Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008) .......... 6

*Nelson v. Millercoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017) .......... 20

*Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 U.S. Dist. LEXIS 194909 (N.D. Cal. Nov. 7, 2019) .......... 9

*Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021) .......... 9

*Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103 (2d Cir. 2009) .......... 20, 21

*Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010) .......... 6

*Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW (MANx), 2014 U.S. Dist. LEXIS 179088 (C.D. Cal. Dec. 18, 2014) .......... 19

*Shabaj v. Holder*, 718 F.3d 48 (2d Cir. 2013) .......... 6

*Sharpe v. A&W Concentrate Co.,* 481 F. Supp. 3d 94 (E.D.N.Y. 2020) .......... 12, 13

*Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sep. 14, 2015) .......... 22

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .................... 7

*Stoltz v. Fage Dairy Processing Indus., S.A.,* No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) .................... 23

*Tomasino v. Estee Lauder Cos*., 44 F. Supp. 3d 251 (E.D.N.Y. 2014) .................... 11

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .................... 7, 8

*Tsirelman v. Daines*, 794 F.3d 310 (2d Cir. 2015) .................... 7

*Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025 (8th Cir. 2014).................... 8

*Warth v. Seldin*, 422 U.S. 490 (1975) .................... 7

*Whitmore v. Arkansas,* 495 U.S. 149 (1990) .................... 10

*Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102 (E.D.N.Y. 2020) .................... 19

**Statutes**

G.B.L. § 349(d) .................... 17

G.B.L. § 350-d .................... 17

N.Y. U.C.C. § 2-313(1)(a) .................... 21

**Other Authorities**

A&C Plastics, Inc., Common Uses of High Density Polyethylene, https://www.acplasticsinc.com/informationcenter/r/common-uses-of-hdpe .................... 3

Assn. of Plastic Recyclers, *Frequently Asked Questions*, https://plasticsrecycling.org/images/library/APR-Caps-On-FAQ.pdf.................... 4

Assn. of Plastic Recyclers, Polypropylene Design Guidance, https://plasticsrecycling.org/pp-design-guidance .................... 5

Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.................... 4, 5, 16, 17

https://www.uprinting.com/blog/bopp/ .................... 4

Jan Dell, *Six Times More Plastic Waste is Burned in the U.S. Than is Recycled*, http://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-usthan-is-recycled.................... 5

New York Association of Counties, *The History and Future of the NYS Bottle Bill* (May 2019), https://www.wyomingco.net/DocumentCenter/View/2231/A-NYSAC-Bottle-Bill-White-Paper#:~:text=Empty%20containers%20can%20be%20recycled,of%20the%20state%27s%20waste%20stream .................... 4

PET Resin Association, *An Introduction to PET*, http://www.petresin.org/news_introtoPET.asp .................... 3

Ryan Felton, "Find Out What's In Your Bottled Water," *Consumer Reports* (May 9, 2019), https://www.consumerreports.org/water-quality/find-out-whats-in-your-bottled-water-water-quality-reports-a7258082716/ ........ 3

Sarah Nassauer, "How Kirkland Signature Became One of Costco's Biggest Success Stories," *Wall Street Journal* (Sept. 10, 2017), https://www.wsj.com/articles/how-kirkland-signature-became-one-of-costcos-biggest-success-stories-1505041202 ........ 3

**Rules**

Rule 12(b)(1) ........ 6

Rule 12(b)(6) of the Federal Rules of Civil Procedure ........ 6

Rule 9(b) ........ 20

**Regulations**

16 C.F.R. § 260.03 ........ 6, 18

16 C.F.R. § 260.12(a) ........ 6, 16, 17

16 C.F.R. § 260.12(c) ........ 6, 18

**INTRODUCTION**

Defendant Niagara Bottling, LLC ("Niagara") bottles water for Costco Wholesale Corp. ("Costco"), which Costco sells under its Kirkland Signature private label store brand. Niagara bottles the water in fully recyclable plastic bottles. Plaintiff – in a Complaint largely copied from a pleading filed by different plaintiffs and different counsel in the U.S. District Court for the Northern District of California – claims that the "100% Recyclable" statement on the water bottle is deceptive, arguing based on national data, that the bottles, caps, and labels may not actually be recycled after use.

Plaintiff's claims have no merit. First, Plaintiff conflates "recyclable" with "will be recycled." The Complaint acknowledges that Kirkland Signature water bottles, their caps, and their labels are made of recyclable materials. It does not allege that Kirkland Signature water bottles, or similar fully recyclable bottles, that are placed in the recycling stream are not actually recycled. Instead, the Complaint focuses on recycling rates for certain types of plastics (rather than plastic water bottles), taking issue with national recycling trends and consumer willingness to recycle. But the allegation that not everything that is recyclable gets recycled does not mean that Kirkland Signature water bottles are not *recyclable*—that is, capable of being recycled—as defined by the U.S. Federal Trade Commission in its Guides for the Use of Environmental Marketing Claims ("Green Guides"). The notion that a consumer would understand Kirkland Signature's label as guaranteeing that every water bottle is actually recycled is simply implausible.

Plaintiff's argument seems to be that even though the bottles themselves and their caps are made from the "most recyclable" forms of plastic, the labels affixed to the bottles are less recyclable, making the bottle less than 100% recyclable. However, the Complaint is silent as to whether the label being attached to or removed from the bottle affects the recyclability of the

label (or the bottle for that matter). Moreover, the Green Guides make plain that "incidental components" such as caps and labels do not affect a product's recyclability. In any event, a reasonable consumer is unlikely to conclude that "100% Recyclable" is a guarantee of that every component of the water bottles will be recycled.

The Article III standing requirement presents another insurmountable challenge for Plaintiff, who cannot show that the Kirkland Signature bottles she purchased were not recycled—and therefore cannot show that she received exactly what she thought she was purchasing. A lack of Article III standing likewise precludes Plaintiff from seeking injunctive relief, as there is no chance she will be "misled" in the future.

Similarly infirm are Plaintiff's claims for damages. Because Plaintiff does not and cannot allege that any of the water bottles she purchased were not, in fact, fully recycled, she has no basis for claiming damages. Nor does Plaintiff sufficiently or plausibly plead a basis for price premium damages.

Plaintiff has no claim, no damages, and no standing for injunctive relief. The Complaint should be dismissed in its entirety as against Niagara.

## FACTUAL ALLEGATIONS

Plaintiff alleges that she purchased Kirkland Signature bottled water from Costco, believing that the bottles, caps, and labels were recyclable, and that she placed empty bottles "in her recycling bin for pick up." (Compl. ¶ 10.) Plaintiff does not allege that her bottles were not, in fact, recycled.

As the label indicates, Costco is the distributor and seller of water sold under its private

label "Kirkland Signature" brand.[1] Niagara bottles the water for Coscto.[2] Kirkland Signature water bottles are, in fact, 100% recyclable. The Complaint asserts no facts to the contrary. Niagara's bottles are made of polyethylene terephthalate ("PET"), with high-density polyethylene ("HDPE") caps. (Compl. ¶ 5, n.6.) Plaintiff concedes that "PET and HDPE are widely considered to be the 'most recyclable' forms of plastic." (*Id.* ¶ 24.)

Notably, the Complaint does not include any factual allegations suggesting that Kirkland Signature bottles are not, in fact, 100% recyclable. Instead, Plaintiff asserts that, *as a nation*, the United States lacks the capacity to recycle *all* products made of PET and HDPE – which includes everything from shampoo bottles to tennis ball canisters to toys to antifreeze containers to water pipes.[3] (*Id.* ¶ 24.) The Complaint, which does not differentiate among various PET and HDPE products, does not include any facts to suggest that the United States—or New York—lacks the capacity to recycle *all water bottles* and *water bottle caps*.

Indeed, the very source cited by Plaintiff for her "capacity" statistics concludes that "there is sufficient likelihood that post-consumer PET waste collected by MRFs is recycled/reprocessed into plastic resin for manufacturing of new products in the U.S. It is reasonable for U.S. consumers to believe that PET bottles and jugs that are collected by

---

1 *See* Exhibit A to Declaration of Creighton Magid; Sarah Nassauer, "How Kirkland Signature Became One of Costco's Biggest Success Stories," *Wall Street Journal* (Sept. 10, 2017), https://www.wsj.com/articles/how-kirkland-signature-became-one-of-costcos-biggest-success-stories-1505041202 (last accessed Sept. 30, 2021).

2 *See* Compl. ¶ 11; Ryan Felton, "Find Out What's In Your Bottled Water," *Consumer Reports* (May 9, 2019), https://www.consumerreports.org/water-quality/find-out-whats-in-your-bottled-water-water-quality-reports-a7258082716/ (last accessed Sept. 30, 2021).

3 *See* PET Resin Association, *An Introduction to PET*, http://www.petresin.org/news_introtoPET.asp (last accessed Sept. 30, 2021); A&C Plastics, Inc., Common Uses of High Density Polyethylene, https://www.acplasticsinc.com/informationcenter/r/common-uses-of-hdpe (last accessed Sept. 30, 2021).

municipal systems will be recycled/reprocessed into a new product."[4] The Complaint, furthermore, does not address recycling in *New York*. Unlike many states, New York has a "bottle bill" – more formally, the New York State Returnable Container Act – which provides an incentive to recycle beverage containers by requiring a 5 cent deposit, which may be redeemed when the container is returned to retailers or redemption centers.[5] As a result of the Act, New York has a 70% to 80% redemption rate for beverage containers.[6]

The Complaint's assertion that polypropylene ("PP") caps[7] and labels[8] are not recyclable confuses stand-alone caps and certain types of plastic films with caps and labels affixed to bottles. Caps, whether made of HDPE or PP, are highly recyclable when affixed to bottles.[9] Likewise, whereas *some* types of stand-alone plastic films may be difficult to process, even the

---

[4] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf ("Greenpeace Survey") (last accessed Sept. 27, 2021) at 21. On a motion to dismiss, the Court may consider, in addition to the Complaint, materials incorporated by reference in the Complaint. *See, e.g., DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[5] New York Association of Counties, *The History and Future of the NYS Bottle Bill* (May 2019), https://www.wyomingco.net/DocumentCenter/View/2231/A-NYSAC-Bottle-Bill-White-Paper#:~:text=Empty%20containers%20can%20be%20recycled,of%20the%20state%27s%20waste%20stream (last accessed Sept. 30, 2021), at 2.

[6] *Id*.

[7] The Complaint alleges that the caps are made of either HDPE or PP. Compl. ¶ 21. The caps at issue are made of HDPE.

[8] The Complaint refers to the labels as being made of "biaxially oriented polypropylene (BOPP)." (Compl. ¶ 21.) BOPP is merely stretched polypropylene. *See* .https://www.uprinting.com/blog/bopp/ (last accessed Sept. 23, 2021).

[9] *See* Assn. of Plastic Recyclers, *Frequently Asked Questions*, https://plasticsrecycling.org/images/library/APR-Caps-On-FAQ.pdf (last accessed Sept. 30, 2021).

Greenpeace survey relied upon by Plaintiff notes that on-bottle PP labels are not problematic unless (unlike here) they cover more than 85% of the bottle.[10]

The Complaint's assertion that "[a]bout a third of the collected PET and HDPE material processed by MRFs" is landfilled or incinerated (Compl. ¶ 25) says nothing about the recyclability of Kirkland Signature water bottles. The blog post cited by the Complaint refers to a 2017 report published by NAPCOR for that statistic.[11] The NAPCOR report, however, makes clear that the imputed processing losses are the result of (1) statistical anomalies due to lighter per-bottle weights and (2) PET containers with "labels that are difficult-to-remove or separate from PET or that block autosort function; barrier layers added to PET to preserve product integrity and extend shelf-life; and metal integrated into PET packages, whether in closures, closure rings, can tops, or pump springs"[12] – none of which the Complaint alleges pertains to Kirkland Select bottles. That PET containers containing metal, barrier layers, and shrinksleeves labels may not end up as "clean flake" in no way suggests that Kirkland Select bottles, which lack such characteristics, are less than fully recyclable.

Perhaps most important, the Complaint conflates "100% Recyclable" with "100% Recycled." As the Complaint concedes, the Federal Trade Commission's "Green Guides," upon which Plaintiff extensively relies, provide that a product may properly be labeled as recyclable if

---

[10] Greenpeace Survey at § 10.2; Assn. of Plastic Recyclers, Polypropylene Design Guidance, https://plasticsrecycling.org/pp-design-guidance (last accessed Sept. 30, 2021) ("PP labels are the same polymer as the final product and PE at the very small levels expected from label residue has a very minimal negative impact. Therefore, these labels that remain with the PP throughout the recycling process, whether they detach or not, increase yield and have minimal negative quality impact for the reclaimer.").

[11] *See* Jan Dell, *Six Times More Plastic Waste is Burned in the U.S. Than is Recycled*, http://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-usthan-is-recycled (last accessed Sept. 27, 2021).

[12] *Id*. at 14.

"it *can be* collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." (Compl. ¶ 27; 16 C.F.R. § 260.12(a) (emphasis added).) As the Green Guides make clear, whether a product is "recyclable" depends upon whether it *can* be recycled, not on whether consumers or MRFs *do*, in fact, recycle ever unit of the product sold. Furthermore, even if Plaintiff were correct about the recyclability of caps and labels, the Green Guides emphasize that "[m]arketers can make unqualified recyclable claims for a product or package if the entire product or package, *excluding minor incidental components*, is recyclable." *See* 16 C.F.R. § 260.12(c) (emphasis added). The Green Guides specifically identify bottle caps as such "minor, incidental components." *See* Example 2 to 16 C.F.R. § 260.03.

**ARGUMENT**

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013). The plaintiff has the burden to prove that subject matter jurisdiction exists: "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw

inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quotations omitted). A complaint, however, must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.,* 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## I. PLAINTIFF LACKS ARTICLE III STANDING.

In order to pursue a claim in federal court, Plaintiff must demonstrate standing to sue by establishing that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff, in her Complaint "must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (ellipses in original)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm.").

### A. Plaintiff Lacks Standing Because She Cannot Establish Injury.

While Plaintiff alleges that she purchased Kirkland Signature water bottles, she fails to satisfy Article III's standing requirement because she does not (and cannot) allege any injury.

Plaintiff alleges that she that "reviewed the accompanying labels and disclosures, and understood them as representations that the Products were, in fact, 100% recyclable," but that she was deprived of the benefit of the bargain because some percentage of PET products generally (not water bottles specifically) are not recycled in some parts of the United States. (Compl. ¶¶ 10, 25–26.)

The insurmountable problem for Plaintiff is that she does not assert—and cannot assert—that the Niagara water bottles *she* purchased and allegedly placed in a curbside recycling bin were not recycled. Without allegations of fact establishing that *her* Niagara water bottles were not recycled, Plaintiff cannot claim that she was denied the benefit of any bargain: if the water bottles she purchased were, in fact, recycled, Plaintiff received exactly the product she believed she was buying. As the Supreme Court has said, "No concrete harm, no standing." *See TransUnion*, 141 S. Ct. at 2200.

Courts have repeatedly found a lack of standing to assert labeling claims where plaintiffs have failed to establish that the label was false or misleading with respect to the *particular* product the plaintiff purchased. *See, e.g., Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025, 1031 (8th Cir. 2014) (purchasers of "100% kosher" hot dogs lacked standing to sue based on the fact that *some* of the defendant's products were tainted with non-kosher meat because it was "pure speculation to say the particular packages sold to the [plaintiffs] were tainted by non-kosher beef, while it [wa]s quite plausible [defendant] sold the [plaintiffs] exactly what was promised: a higher quality, kosher meat product."); *Gaminde v. Lang Pharma Nutrition, Inc*., No. 1:18-cv-300 (GLS/DEP), 2019 U.S. Dist. LEXIS 48595, at *1 (N.D.N.Y. Mar. 25, 2019) (plaintiff lacked standing because it was "speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [the

plaintiff] purchased must as well" and thus the plaintiff's "failure to allege that he tested his bottle of CVS Krill Oil—indeed, his failure to make any allegation regarding how he knows that it was mislabeled—[was] fatal"); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 U.S. Dist. LEXIS 194909, at *11 (N.D. Cal. Nov. 7, 2019) (plaintiff lacked standing because he "fail[ed] to plead the water *he* purchased contained violative arsenic levels") (emphasis in original); *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 U.S. Dist. LEXIS 103629, at *12 (N.D. Cal. June 2, 2021) (plaintiff lacked standing to bring suit over a "no antibiotics" label despite alleging that a "systemic" manufacturing problem had tainted some products with antibiotics because he could not allege that *he* "purchased one of these products containing antibiotics") (emphasis added); *Doss v. General Mills, Inc.*, 816 F. Appx. 312 (11th Cir. 2020) (plaintiff lacked standing to pursue claims relating to glyphosate in Cheerios because she "has not alleged that *she* purchased any boxes of Cheerios that contained any glyphosate"—just that some Cheerios tested did (emphasis added)).

Because Plaintiff cannot show that the bottles *she* purchased were not recycled, she cannot establish injury and therefore cannot establish standing. Further, because Plaintiff has no means of demonstrating that the bottles *she* purchased were not recycled, she cannot amend her Complaint to cure this deficiency. Because amendment would be futile, the Complaint should be dismissed with prejudice with respect to Niagara. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2011) (the court is not required to grant leave to amend if amendment would be futile, such that "it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief").

### B. Plaintiff Lacks Standing to Seek Injunctive Relief.

To establish standing for injunctive relief, Plaintiff must show that the risk of future injury "must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)). The Supreme Court has made clear that "'[a]llegations of possible future injury' are not sufficient." *Id*. at 409 (quoting *Whitmore,* 495 U.S. at 158). Plaintiff, moreover, "cannot rely on speculation about 'the unfettered choices made by independent actors not before the courts.'" *Id*. at 414 n. 5 (quoting *Lujan*, 504 U.S. at 562). "[S]uch a threat of future injury must be 'actual and imminent, not conjectural or hypothetical.' If the injury occurred in the past—or if some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III." *Berni v. Barilla S.P.A*., 964 F.3d 141, 147 (2d Cir. 2020).

In her Complaint, Plaintiff alleges that, because of her past purchasing experience, she "will be unable to rely on Defendant Niagara's 100% recyclable claim in the future unless appropriate injunctive relief is entered." (Compl. ¶ 10.) She also alleges that she "desires to purchase water bottles from Defendant Niagara that are, in fact, 100% recyclable, but cannot rely on Defendant Niagara's representations regarding recyclability" and thus she "is likely to suffer future harm absent injunctive relief compelling Defendant Niagara to ensure their Products are 100% recyclable or compelling Defendant Niagara to remove such misleading representations from the packaging so that [she] may properly value the Products." (*Id.*) Plaintiff can hardly claim that she will continue to be "deceived" by the 100% Recyclable statements on Niagara water bottles when, as the Complaint demonstrates, she is fully familiar with the alleged

shortcomings of the recycling ecosystem and, furthermore, maintain that plastic bottles will *never* be recyclable.

Here, Plaintiff has alleged, at best, a past harm. "[P]ast purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm. Such a past harm is of the kind that is commonly redressable at law through the award of damages, which, it should be noted, is what Plaintiffs primarily sought in their complaint." *Berni*, 964 F.3d at 147. Even if a past purchaser does purchase an allegedly offending product again in the future, "they will not again be under the illusion" of the allegedly deceptive advertising, and so will be buying the product "with exactly the level of information that they claim they were owed from the beginning." *Id.*; *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS)(AKT), 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015) ("Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them."); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (finding that plaintiff failed to allege a sufficient future injury, even though she argued that "she remains a potential Estee Lauder customer and is likely to be misled again" because she also "made clear that she does not believe the . . . products have the effects advertised by Estee Lauder, and that she would not have purchased them in the first place absent the allegedly misleading advertisements").

Nor can Plaintiff manufacture standing by arguing that she would purchase Niagara or Kirkland Signature products in the future if the labeling were changed. In *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 238-39 (S.D.N.Y. 2020), although the plaintiffs alleged that they would purchase the defendant's products as long as it "change[d] its practices to mirror its advertising," the court found that this failed to evidence "any actual intent to purchase

the products again," and therefore the plaintiffs did "not establish[] a likelihood of future injury sufficient to show standing" and their claims for injunctive relief were dismissed. Similarly, in *Sharpe v. A&W Concentrate Co.,* 481 F. Supp. 3d 94 (E.D.N.Y. 2020), the court held that plaintiffs' allegation that they "would not have purchased the Product at a premium price" had they known that a soft drink contained artificial flavorings undermined any notion of a future purchase intent:

> On the face of the complaint, plaintiffs concede that they would not have purchased the sodas if they had known of the beverages' true vanilla composition. And now that they are aware of the drink's ingredients, plaintiffs state that they do not intend to purchase it again, unless defendants change either the product or the labeling. Because plaintiffs admit that they are unlikely to purchase the products at issue, unless the products are changed, they lack standing to seek injunctive relief.

*Sharpe*, 481 F. Supp. 3d at 100 – 101. Similarly, here, Plaintiff alleges that "she would not have purchased the Products from Defendant on the same terms if she had known that they were not, in fact, 100% recyclable," Compl. ¶ 10, and that she will not purchase Kirkland Signature or Niagara bottled water in the future unless the bottle or label is changed. *Id*. As in *Sharpe*, Plaintiff concedes that she is unlikely to purchase the products at issue in the future, and therefore lacks standing to seek injunctive relief. *See also Holve v. McCormick & Co., Inc*., 334 F. Supp. 3d 535, 553 n.10 (W.D.N.Y. 2018) (collecting cases finding that conditional promises to purchase product if product is altered are insufficient to allege future injury).

Moreover, the fact that unknowing class members might purchase Niagara's products based on its' allegedly unlawful advertising does not establish standing. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C*., 433 F.3d 181, 199 (2d Cir. 2005) ("[T]he named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (quotations omitted)); *see also Allee v.*

*Medrano*, 416 U.S. 802, 828-29 (1974) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."); *Buonasera v. Honest Co*., 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016) ("because Buonasera does not individually have standing to seek injunctive relief, he does not have standing to seek injunctive relief on behalf of a putative New York class"); *Sharpe*, 481 F. Supp. 3d at 101 ("Because plaintiffs do not individually have standing to seek injunctive relief, they also lack standing to seek injunctive relief on behalf of the class.").

Plaintiff lacks Article III standing to pursue injunctive relief, both on her on behalf and on behalf of the putative class.

### C. Plaintiff Lacks Standing With Respect to Products Other Than Kirkland Signature Water.

A plaintiff alleging the product labeling is misleading lacks both Article III standing and class standing with respect to products she did not purchase unless the labeling on the other products is the same or substantially similar, such that no "unique evidence would be required to prove that the different advertising statements made for those products were false and misleading." *Hart v. BHH, LLC*, No. 15-cv-4804, 2016 U.S. Dist. LEXIS 59943, at *8 (S.D.N.Y. May 5, 2016) (citing *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (unpublished)); *see also Elkind*, 2015 U.S. Dist. LEXIS 63464, at *10. Although there are circumstances in which the standing issue may be deferred until the class certification stage, the issue is properly the subject of a motion to dismiss where "the nature and content of the specific misrepresentation alleged" differs among products. *See DiMuro*, 572 F. App'x at 29 (affirming dismissal of consumer fraud claims with respect to non-purchased products because the

defendant had made "different advertising claims" with respect to those products). Plaintiff here lacks both Article III and class standing as to products she did not purchase because there is not even an allegation that the labeling on the other products was in any material respect similar to the labeling on the Kirkland Signature water she purchased.

Plaintiff alleges that she purchased Kirkland Signature water and that, after reading the label, "understood" the "labels and disclosures" to mean that the water bottle was 100% recyclable. (Compl. ¶ 10.) The Complaint does not state what about the label conveyed that impression. Plaintiff does not allege that she purchased any other product bottled by, marketed by, or distributed by Niagara, nor does she allege that the labels on bottled waters produced by, marketed by, or distributed by Niagara are similar in any way. In fact, the Complaint points out the *dissimilarity* in the labels of the only two products portrayed.

The Complaint includes two images following paragraph 22. Both are of the *outer packaging* of multi-bottle packages of bottled water. The first image, of an 80-count pack of 8 ounce bottles of Kirkland Signature Water, includes the statement, "This package is 100% Recyclable." (Plaintiff does not indicate whether she understood "this package" to refer to the *outer packaging* or to the 80 bottles inside.) The second image is of the outer packaging of a 24-count package of Niagara-branded water bottles. Although barely legible, the image includes the statement, "Bottle is 100% Recyclable – Excludes Labels and Outer Packaging, Which May Not Be Recyclable in Your Area." An enlarged view of the label statement is below:




To the extent that Plaintiff claims that she understood the reference to "this package" on the outer packaging of an 80-count package of Kirkland Signature bottled water to indicate that the bottles themselves – including labels – are 100% recyclable, the statement on the Niagara outside packaging would clearly convey a different impression.

Because Plaintiff does not allege substantial similarity in the labeling among products, and because Plaintiff's own examples demonstrates the *dissimilarity* of the labeling, Plaintiff lacks both Article III and class standing with respect to the products she did not purchase.

## II. THE COMPLAINT FAILS TO STATE ACTIONABLE CLAIMS.

### A. Plaintiff Fails To State a Plausible Claim Under New York's Consumer Protection Statutes.

In order to state a claim under New York's consumer protection statutes, Plaintiff must show that the 100% qualifier to the claim that the bottle is recyclable is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "[P]laintiff[] must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.' Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting

reasonably in the circumstances, could be misled.'" *Jessani v. Monini N. Am., Inc.*, 744 Fed. Appx. 18, 19 (2d Cir. 2018) (summary order) (internal citations omitted) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). This is an objective inquiry. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Plaintiff does not plausibly allege that the "100% Recyclable" statement is false or likely to mislead a reasonable consumer. The Complaint itself acknowledges that Niagara water bottles are, in fact, fully recyclable. (Compl. ¶¶ 21, 24, 26.) The gist of Plaintiff's claims appears to be that the statement is misleading because not all water bottles are actually recycled, or, alternatively, that caps and labels, if separated from the bottles, may not always be recycled. As a matter of law, no reasonable consumer would understand "100% Recyclable" to mean what Plaintiff claims it means.

Plaintiff conflates consumers' *willingness to recycle* with *recyclability of the product*. There are no allegations in the Complaint suggesting that a Niagara bottle cannot be completely recycled or that recycling capacity is inadequate to handle every *water bottle* placed by a consumer in the recycling stream. No reasonable consumer would understand "100% Recyclable" to mean that 100% of consumers actually recycle the bottles – only that the bottles, when placed in the recycling stream, are fully recyclable. This is consistent with the Green Guides, which make clear that "recyclable" refers only to the *ability* to be recycled—not whether the product actually *is* recycled. *See* 16 C.F.R. § 260.12(a).

Second, there is nothing in the Complaint suggesting that less than 100% of the PET and HDPE *actually put into the recycling stream* is recycled. Indeed, the Greenpeace Survey cited

by Plaintiff says PET bottles "have sufficient domestic municipal collection and reprocessing capacity to provide consumers with reasonable assurance that a collected item will be recycled into another product."[13] The "contamination and processing losses" referenced in the Complaint pertain to products *other than* the type of PET bottle bottled by Niagara and sold by Costco. Nothing in the Complaint points to any Kirkland Signature water bottles (or even similar water bottles) not being recycled once placed in the recycling stream.

### B. Niagara's Compliance with the Green Guides Bars Plaintiff's Claims Under New York's Consumer Protection Statutes

Plaintiff's claims under New York G.B.L. Sections 349 and 350 also fail due to the statutes' safe harbor provisions. These provisions provide a complete defense for statements that comport with the FTC's "Green Guides." *See* G.B.L. § 349(d) ("In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission . . . ."); G.B.L. § 350-d ("In any such action it shall be a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission . . . .").

As noted above, the Green Guides specifically provide that a product may properly be labeled as recyclable if "it *can be* collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." *See* 16 C.F.R. § 260.12(a) (emphasis added). The Green Guides further provide that "[m]arketers can make unqualified recyclable claims for a product or package if the entire product or package, *excluding minor incidental components*, is recyclable." *See* 16 C.F.R.

[13] Greenpeace Survey at § 7.2.2

§ 260.12(c) (emphasis added). The Green Guides specifically identify bottle caps as such "minor, incidental components." *See* Example 2 to 16 C.F.R. § 260.03 ("A soft drink bottle is labeled 'recycled.' The bottle is made entirely from recycled materials, but the bottle cap is not. Because the bottle cap is a minor, incidental component of the package, the claim is not deceptive.").

The Complaint does not assert that Niagara water bottles cannot be recycled. Indeed, the Complaint concedes that "PET and HDPE are widely considered to be the 'most recyclable' forms of plastic" and that a majority of PET water bottles, HDPE labels, and PP labels are processed into "clean flake" material or plastic resin for use in manufacturing or assembling another item." (Compl. ¶¶ 24 – 25.) Even if the Court were to credit Plaintiff's claim that U.S. domestic MRFs only have the capacity to process 22.5% of total post-consumer PET and 12% of total post-consumer HDPE (*id.* ¶ 24) (which it should not, for the reasons explained above), neither statistic suggests that the U.S., and New York in particular, lacks the capacity to recycle every single PET water bottle and HDPE bottle cap returned by consumers for recycling. More pertinently, nothing in the Complaint alleges that Niagara water bottles cannot be "collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item"– the standard for a valid claim of recyclability under the Green Guides. Even if Plaintiff's claims regarding the bottle caps and labels had merit – and they do not – the caps and labels constitute "minor, incidental components" that do not render the bottles' recyclability claim misleading under the Green Guides. Because the "100% Recyclable" statement on Niagara water bottle labels "conform[s] to the standards" set forth in the Green Guides, the labels are not actionable under New York G.B.L. Sections 349 and 350 pursuant to their safe harbor provisions.

### C. Plaintiff Fails To Allege a Viable Claim for Damages.

"[C]ourts applying New York law have consistently . . . [required] there to be a connection between the defendant's deception and an objective injury, either in terms of price or product." *Belcastro v. Burberry Ltd.*, 16-CV-1080 (VEC), at *7 (S.D.N.Y. Feb. 23, 2017)

The Complaint merely asserts that Plaintiff "suffered damages" and paid a "price premium." (Compl. ¶¶ 8, 10, 52, 63, 78.) "Simply because Plaintiff[] here recite[s] the word 'premium' multiple times in the[] Complaint does not make [her] injury any more cognizable." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *18 (S.D.N.Y. Oct. 26, 2016); *see also Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). The Complaint "provides no facts regarding what the premium was, what price [Plaintiff] paid for the products, or the price of non-premium products." *Colella*, 348 F. Supp. 3d at 143. Even if the Court were to credit all possible inferences in Plaintiff's favor and conclude that the bottles' labels or caps were not recyclable, all but a tiny fraction of the bottles would still be recyclable. It is simply implausible that the difference between a bottle being 100% recyclable and being *nearly* 100% recyclable would result in a price premium. *See, e.g.*, *Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102 (E.D.N.Y. 2020) (finding plaintiffs failed to allege an injury where the complaint lacked "any semblance of facts illustrating that the Plaintiffs in fact paid such a premium, such as, the products they purchased or the actual value of those products. Put another way, there are no non-conclusory allegations actually demonstrating that the Plaintiffs paid a price premium for any of the products"); *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW (MANx), 2014 U.S. Dist. LEXIS 179088, at *5 (C.D. Cal. Dec. 18, 2014) ("The Court has found no case holding that a consumer may recover based on consumers'

willingness to pay irrespective of what would happen in a functioning market"). Plaintiff's bare allegations of a "price premium" are similarly deficient.

### D. Plaintiff's Claim for Fraud Should Be Dismissed for Failure to Satisfy Rule 9(b).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Claims premised on fraud must . . . must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nelson v. Millercoors, LLC*, 246 F. Supp. 3d 666, 672 (E.D.N.Y. 2017) (quoting *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993)). "To state a claim for fraud under New York law, a plaintiff must allege facts showing '(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury.'" *Premium Mortg. Corp. v. Equifax, Inc*., 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc*., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)). "'[G]eneralized' motives, such as the desire to earn profits, which "could be imputed to any publicly-owned, for-profit endeavor,' are 'not sufficiently concrete for purposes of inferring scienter.'" *In re Lyman Good Dietary Supplements Litig.,* No. 17-CV-8047 (VEC), 2018 U.S. Dist. LEXIS 131668, at *9 (S.D.N.Y. Aug. 6, 2018) (quoting *Chill v. Gen. Elec. Co*., 101 F.3d 263, 268 (2d Cir. 1996)).

Plaintiff's allegations fail to meet Rule 9(b)'s rigorous standard. Plaintiff only includes three allegations to support her fraud claim: (1) that Niagara "misrepresented on the Products' labeling that it was '100% Recyclable,' when in fact they are not," Compl. ¶ 67; (2) that Niagara "also engaged in material omissions because they knew, or reasonably should have known, that

the Products were not, in fact, 100% recyclable," *id.* ¶ 68; and (3) Niagara made "false and misleading representations and omissions . . . upon which Plaintiff and members of the proposed Class reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class to purchase the Products," *id.* ¶ 70. These allegations are insufficient.

First, as explained above, in order to state a claim for fraud under New York law, a misrepresentation or omission must be "false and known to be false by defendant." *Premium Mortg. Corp.*, 583 F.3d at 108 (quotations omitted). However, Plaintiff only conclusory alleges that Niagara "knew" that the claims were false, and its allegation that Niagara "should have known" the claims were false (they are not) cannot support a claim for fraud. Furthermore, as discussed in Sections II.A and II.C, *supra*, Plaintiff's allegations do not show that Niagara's representations were false, nor has Plaintiff sufficiently alleged any damages. Therefore, Plaintiff's claim for fraud must be dismissed.

### E. Plaintiff Fails to State a Claim for Breach of Express Warranty

To state a claim for breach of an express warranty, "[a] plaintiff must allege 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon [to] the plaintiff's detriment.'" *Ault v. J.M. Smucker Co.*, No. 13-cv-3409 (PAC), 2014 U.S. Dist. LEXIS 67118, at *19 (S.D.N.Y. May 15, 2014) (quoting *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012)). The New York Uniform Commercial Code states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." N.Y. U.C.C. § 2-313(1)(a). However, "[g]eneralized statements by the defendant . . . do not support an express warranty claim if they are 'such that a reasonable

consumer would not interpret the statement as a factual claim upon which he or she could rely.'" *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG)(RML), 2015 U.S. Dist. LEXIS 122186, at *27 (E.D.N.Y. Sep. 14, 2015) (quoting *Hubbard v. GMC,* No. 95-cv-4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *18 (S.D.N.Y. May 22, 1996)). If a reasonable consumer would not be mislead by the defendant's packaging, a plaintiff also cannot state a claim for breach of express warranty. *See Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018). Additionally, "in order to assert a breach of express warranty claim under New York law, a buyer must provide the seller with timely notice of the alleged breach of warranty." *Lugones*, 440 F. Supp. 3d at 244 (quotations omitted).

Plaintiff's claim for breach of express warranty fails because a reasonable consumer would not be mislead. As discussed in Section II.A, *supra*, Plaintiff does not plausibly allege that the "100% Recyclable" statement is false or likely to mislead a reasonable consumer. Furthermore, Plaintiff did not provide "timely" notice of her alleged breach of express warranty claim. While Plaintiff alleges that she provided "timely notice" of her claim by mailing a letter to Niagara (Compl. ¶ 76), this letter was mailed on July 23, 2021, only five days before the Complaint was filed. This notice is insufficient because, while technically provided a few days before the suit was filed, it undermines the purpose behind this requirement: providing the defendant the opportunity to cure. *Cf. Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451 (KMK), 2021 U.S. Dist. LEXIS 148982, at *57-59 (S.D.N.Y. Aug. 9, 2021); *Ehlers v. Ben & Jerry's Homemade*, Inc., No. 2:19-cv-00194, 2020 U.S. Dist. LEXIS 80773, at *24 (D. Vt. May 7, 2020). For this additional reason, Plaintiff's claim for breach of express warranty must be dismissed.

**F. Plaintiff's Unjust Enrichment Theory Fails to State a Claim**

Plaintiff fails to allege any unique, equitable circumstances which differentiates her unjust enrichment claim from her other claims. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc*., 448 F.3d 573, 586 (2d Cir. 2006). New York law does not allow claims for unjust enrichment to serve as "catchall cause[s] of action to be used when others fail." *Corsello v. Verizon N.Y., Inc*., 967 N.E.2d 1177, 1185 (N.Y. App. 2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*

It is true that plaintiffs may plead unjust enrichment in the alternative to other claims. *E.g., Burton v. Iyogi, Inc*., No. 13-CV-6926 (DAB), 2015 U.S. Dist. LEXIS 33809, at *32 (S.D.N.Y. Mar. 16, 2015). But it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action. *Ebin v. Kangadis Food Inc*., No. 13-cv-2311 (JSR), 2013 U.S. Dist. LEXIS 174174, at *18-19 (S.D.N.Y. Dec. 9, 2013); *see also Stoltz v. Fage Dairy Processing Indus., S.A.,* No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *78-80 (E.D.N.Y. Sep. 22, 2015) (dismissing unjust enrichment claim "based on the same allegations" as another claim).

Here, the allegations supporting Plaintiff's unjust enrichment claim merely repeat the allegations of Plaintiff's other claims. The heart of Plaintiff's unjust enrichment claim is that Niagara "has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products. Retention of moneys under these circumstances is unjust

and inequitable because Defendant misrepresented that the Products were '100% Recyclable.'" Compl. ¶ 84. But this claim is duplicative of Plaintiff's consumer protection claims, and thus should be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims should be dismissed.

Dated: October 1, 2021

DORSEY & WHITNEY LLP

By: /s/ Elizabeth Rozon Baksh
Elizabeth Rozon Baksh (#4686556)
baksh.elizabeth@dorsey.com
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200
Facsimile: (212) 953-7201

Creighton R. Magid (*pro hac vice*)
magid.chip@dorsey.com
1401 New York Avenue NW, Suite 900
Washington DC, 20005
Telephone: (202) 442-3555
Facsimile: (202) 442-3199

Kent J. Schmidt (*pro hac vice* forthcoming)
schmidt.kent@dorsey.com
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
Telephone: (714) 800-1445
Facsimile: (202) 464-4507

Attorneys for Defendant NIAGARA BOTTLING, LLC