## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELADIA DUCHIMAZA, on behalf of herself and all others similarly situated, <br><br>            Plaintiff, <br><br> v. <br><br> NIAGARA BOTTLING, LLC, <br><br>            Defendant. | Case No. 1:21-cv-06434-PAE <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Eladia Duchimaza ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge, against Defendant Niagara Bottling, LLC ("Defendant").

## <u>NATURE OF THE ACTION</u>

1.     This is a class action lawsuit regarding Defendant's manufacturing, distribution, marketing and sale of Defendant's bottled water Products[1] labeled as "100% Recyclable" on behalf of a class of purchasers of the Products in the State of New York.  Each of the Products bears the representation on the Products' labeling and packaging that the bottles are "100% Recyclable" which, as set forth herein, is untrue.  In short, each individual Product's label is not recyclable, and the plastic bottles and caps are not "100% Recyclable."  As such, the representation of "100% Recyclable" on the Products is equally false and misleading for each individual Product, and for the same reasons.

---

[1] The following brands of bottled water are referred to herein as the "Products": Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Market Essentials.

2.     Recycling is "the process of collecting and processing materials that would otherwise be thrown away as trash and turning them into new products."[2]  Thus, "recyclable" products must, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse as a new product.

3.     Here, Defendant's Products are not turned into new products, they are mostly incinerated or otherwise lost.

4.     Plastic waste is an increasingly dire international problem.  Nearly 90% of plastic waste is not recycled.  Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12 million tons of plastic enters the ocean each year.[3]  As consumers have become increasingly aware of the problems associated with plastic pollution, many consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

5.     In light of the recycling problems related to single-use plastics, environmental organizations such as the Sierra Club and Greenpeace have sought to inform the public that reusable bottles (rather than single-use plastic bottles such as the Products) are the only truly sustainable choice.  Recognizing consumer concerns regarding plastic pollution and excessive plastic waste generation, many corporations are making commitments to make their products recyclable, reusable, or compostable.[4]  In fact, in 2019, the American Beverage Association launched the "Every Bottle Back" Initiative, which claims to have "carefully design[ed] [] plastic

---

[2] United States Environmental Protection Agency, *Recycling Basics*, https://www.epa.gov/recycle/recycling-basics (last accessed July 14, 2021).
[3] Nick Young, How does plastic end up the ocean?, https://www.greenpeace.org/aotearoa/story/how-does-plastic-end-up-in-the-ocean/ (last accessed July 15, 2021)
[4] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 4.

bottles to be 100% recyclable, including the caps."[5]  Central to this marketing campaign is the claim "100% Recyclable," which Defendant affixes to the Products.

6.      However, despite their labeling to the contrary, the plastic bottles sold by Defendant are not "100% Recyclable" because: (1) the propropylene ("PP") bottle caps and the biaxially oriented polypropylene ("BOPP") plastic labels on the bottles are not recyclable and cannot be processed into usable material; (2) at least 28% of the polyethylene terephthalate ("PET") bottles and high-density polyethylene ("HDPE") bottle caps[6] sent to recycling centers are lost in processing or are contaminated and thus end up in landfills or are burned; and (3) domestic recycling facilities only have the capacity to process approximately 22.5% of the PET and HDPE consumed in the United States.

7.      Thus, only some PET and HDPE plastic bottles and jugs can be legitimately labeled as recyclable in the U.S. today.[7] As a result, the Products are not "100 % recyclable" as Defendant claims.

8.      New York is no exception.  Only a very low percentage of plastic, including Defendant's Products, is actually recycled.  Take for example Southampton and East Hampton, New York.  One news report indicated that plastic bottles, such as Defendant's Products, "do not stand a chance."[8]  The article explains:

> [Plastic bottles and other] recyclables continue down the line before
> dropping into a massive compactor. The trash is then either pressed
> and packaged into 2-ton bales and shrouded in thick black tarp-like

---

[5] American Beverage Association, https://www.innovationnaturally.org/every-bottle-back/ (last accessed July 14, 2021).
[6] Niagara Bottling Co., https://www.niagarawater.com/faq/ ("All of our bottles are produced using PET (polyethylene terephthalate) plastic and High-Density polyethylene (HDPE) caps.") (last accessed July 16, 2021).
[7] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 4.
[8] Cailin Riley, *What Happens To Our Recycling, Part One: The Recycling Myth*, November 27, 2018, https://www.27east.com/east-hampton-press/what-happens-to-our-recycling-part-one-the-recycling-myth-1632177/ (last visited 10/18/21).

wrapping before being loaded onto flatbed trucks and transported to landfills in Virginia, Ohio, Pennsylvania or sent to an incinerator.

None of those bales is recycled.[9]

9.     In fact, when it comes to plastic bottles such as the Products, "the vast majority of that material is never recovered. It ends up in a landfill."[10]

10.     Other areas in New York, such as Fort Edward, stopped accepting recyclables altogether.[11]   Instead, it "started shipping its recyclables to be burned in a regional trash incinerator."[12]

11.     Indeed, the plastic film comprising the Products' labels is not recyclable in New York County.  The New York City Department of Sanitation explicitly states that "[f]ilm plastic", including "wrappers", is not accepted as part of the recycling program.[13]   For that reason alone, Defendant's "100% Recyclable" representation is false and misleading.  As the Sierra Club notes: "In a final irony, the polypropylene plastic film labels on which the '100 percent recyclable' claims are printed on the bottles are themselves completely unrecyclable."[14]

12.     Defendant knows that the Products typically end up in landfills or incinerated and are unsuitable for recycling.  Thus, Defendant's representations that the Products are "100% Recyclable" are material, false, misleading and likely to deceive reasonable consumers.

13.     Defendant's marketing of their Products as "100% Recyclable" also violates the Federal Trade Commission Green Guides.  *See* 16 C.F.R. § 260.12.  Because the Products' label is not recyclable, it cannot be "collected, separated, or otherwise recovered from the waste

---

[9] *Id.*
[10] *Id.*
[11] Brian Nearing, *Recycling Woes Pile Up*, July 28, 2018, https://www.timesunion.com/local/article/Recycling-woes-piling-up-13113765.php (last visited 10/19/21).
[12] *Id.*
[13] https://www1.nyc.gov/assets/dsny/site/services/recycling/what-to-recycle (last visited 10/19/21).
[14] https://www.sierraclub.org/sierra/plastic-bottlers-are-lying-about-recycling (last visited 10/19/21).

stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12.

14.      Further, the Green Guides make clear that "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers."  16 C.F.R. § 260.12. Defendant is and was obligated to qualify its recyclable claims because portions of the Products, most notably the labels, are not recyclable, *see* 16 C.F.R. § 260.12 ("For items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim to avoid deception about which portions are recyclable."); 16 C.F.R. § 260.12 ("If any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive."), and because more than half of the municipal waste collected is ultimately not recycled.

15.      In short, Defendant markets the Products as "100% Recyclable" to capitalize on consumer demand for "green" products. In particular, Defendant intends for reasonable consumers to believe, and reasonable consumers do believe, that the Products will be recycled in their entirety if the consumer disposes of the empty bottles in a recycling bin. Further, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are "100% Recyclable," the bottles are specially designed to be environmentally superior to competitors' products that do not contain the same representation. Finally, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are part of a circular plastics economy in which all bottles are recycled into new bottles to be used again.  Because consumers are led to believe the bottles are "100% Recyclable," and therefore purchase them because they are a "green" product, Defendants are

able to charge a premium for the Products. If consumers knew that the Products were not "100% Recyclable," the product would not command a premium price based on that representation, fewer consumers would purchase them, and Plaintiff would not pay the premium attributable to that representation.

16.     In representing that the Products are "100% Recyclable," Defendant violated the consumer protection laws of New York by engaging in affirmative acts and omissions which were misleading and stand outside the norm of reasonable business practice.  Defendant's practices will victimize the average consumer.  Had Defendant not misrepresented that the Products were "100% Recyclable," and/or failed to omit material facts regarding the recyclability of the Products, Plaintiff would not have paid the same amount for the Products.  Stated another way, Plaintiff paid a premium price for the Products as a result of Defendant's affirmative acts and/or omissions in an amount to be determined at trial.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable water bottle products sold without the "100% Recyclable" representation, or through contingent variation study, or through other means regularly employed by economic and valuation experts.

17.     Plaintiff asserts claims on behalf of herself and a class of all persons in the State of New York who purchased the Products for violation of New York General Business Law ("G.B.L.") §§ 349 and 350, *et seq.*, fraud, negligent misrepresentation, breach of express warranty and unjust enrichment.

## **PARTIES**

18.     Plaintiff Eladia Duchimaza is a resident of New York, New York.  Ms. Duchimaza has purchased numerous multi-bottle packs of Defendant Niagara's Kirkland bottled water, with her most recent purchase being in July 2021.  Ms. Duchimaza made these purchases in-store at a

Costco store located at 517 E. 117th Street, New York, NY 10035.  Ms. Duchimaza paid approximately $4 for the packages of Niagara's Kirkland bottled water.  When purchasing the Products, Ms. Duchimaza reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant Niagara that the Products were, in fact, "100% Recyclable."  Ms. Duchimaza saw Defendant's representation on the Product's packaging and labeling that the Product was "100% Recyclable" and she purchased them, in part, because she believed that the entirety of the bottles, including the labels and caps, could and would be recycled if she disposed of them in a recycling bin.  Ms. Duchimaza reasonably believed, based on Defendant Niagara's representations, that the entirety of the bottle (including the cap and label) was recyclable when disposed of in a recycling bin.  Ms. Duchimaza in fact attempted to recycle the bottles she purchased by placing them in her recycling bin for pickup.  For the reasons discussed herein, the bottles Plaintiff purchased were not actually recycled because the Product's label is not recyclable in her area and because given nationwide and state statistics, less than half of the bottles Ms. Duchimaza recycled would have actually been recycled into reusable material.  Ms. Duchimaza relied on these representations to her detriment in deciding to purchase the Products manufactured by Defendant Niagara in that she would not have purchased the Products from Defendant on the same terms if she had known that they were not, in fact, "100% Recyclable."   Ms. Duchimaza paid a premium price for the Products quantified as the difference in value between the Products as represented versus the value of the Products received (the value of the Products received was less than the value if the Products were, in fact, 100% recyclable).

19.     Because of the aforementioned facts, Plaintiff Duchimaza will be unable to rely on Defendant Niagara's 100% recyclable claim in the future unless appropriate injunctive relief is entered.  Plaintiff Duchimaza desires to purchase water bottles from Defendant Niagara that are,

in fact, 100% recyclable, but cannot presently rely on Defendant Niagara's representations regarding recyclability.  As such, Plaintiff Duchimaza is likely to suffer future harm absent injunctive relief compelling Defendant Niagara to ensure their Products are 100% recyclable or compelling Defendant Niagara to remove such misleading representations from the packaging so that Plaintiff Duchimaza may properly value the Products.

20.     Defendant Niagara Bottling, LLC ("Niagara") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Ontario, California.  Defendant Niagara manufactures, markets, and sells beverages, including bottled water, in the United States under several brand names, including Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Mart Market Essentials.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

22.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contracts with the State of New York, and because Plaintiff purchased the Products in New York.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff purchased and used the Products in this District.

## FACTS COMMON TO ALL CLAIMS

24.     The United States is grappling with two major plastic waste problems: plastic pollution and the generation of excessive plastic waste that is disposed of in landfills or incinerated with significant carbon emissions.

25.     The sheer amount of plastic waste accumulating in the environment is accompanied by an array of negative side effects.  For example, plastic debris is frequently ingested by marine animals and other wildlife, which can be both injurious and poisonous.  Floating plastic is also a vector for invasive species, and plastic that gets buried in landfills can leach harmful chemicals into ground water that is absorbed by humans and other animals.  Plastic litter on the streets and in and around parks and beaches also degrades the quality of life for residents and visitors.  As a result, consumers actively seek out products that are compostable, recyclable, or reusable to prevent the increase in global waste and to minimize their environmental footprints.

26.     Historically, recycling facilities in the United States shipped plastic scrap to China for recycling.  But tons of that shipped plastic waste was never recycled.  Instead, it was burned or entered into waterways, where it was carried into the ocean.[15]  Despite this, due to low-cost shipping and labor, the United States became reliant on China to accept plastic materials collected by U.S. municipal systems.[16]

27.     However, in 2018, China implemented a new scrap-import policy, restricting imports of plastic waste and other materials from other countries, including the United States. This had a significant and overwhelming effect on the U.S.'s limited municipal recycling collections

---

[15] Christopher Joyce, *Where Will Your Plastic Trash Go Now that China Doesn't Want it?*, www.NPR.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it (last accessed July 16, 2021).
[16] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 6.

systems, commonly referred to as municipal recycling facilities ("MRFs").[17]

28.     MRFs collect recyclable waste, often through curbside pickup.  The recyclable waste is then sorted and sold to facilities that sort and process the material into clear flake material that can be sold and used to make new plastic items.

29.     Due to China's scrap-import policy, MRFs, including those in New York, had to make numerous changes to municipal recycling programs, with many deciding to longer accept certain plastics, and employing tighter quality standards.[18]  Thus, as a result of these market conditions, many cities and counties around the country are no longer recycling many types of plastic dropped into recycling bins.  Instead, many types of plastic are being landfilled, burned, or stockpiled.[19] Acceptance by an MRF is therefore not proof that a product will be recycled.

30.     Each of the Products manufactured by Defendant has three basic plastic components: the bottle, the bottle cap, and the label that is wrapped around the bottle.  The bottles are made of polyethylene terephthalate (PET, #1 plastic), the plastic most commonly used in single-use plastic water bottles.[20]  The Products' bottle caps are made of polypropylene (PP, #5 plastic) or high-density polyethylene (HDPE, #2 plastic).  Finally, the Products' labels are made from biaxially oriented polypropylene (BOPP), a form of PP.

31.     Throughout the class period, Defendant has consistently marketed on the Products' packages that they are "100% Recyclable":

---

[17] *Id.*

[18] WasteDive, *How Recycling Has Changed In All 50 States*, https://www.wastedive.com/news/what-chinese-import-policies-mean-for-all-50-states/510751/ (last accessed July 16, 2021).

[19] The Guardian, *Americans' Plastic Recycling is Dumped in Landfills, Investigation Shows*, https://www.theguardian.com/us-news/2019/jun/21/us-plastic-recycling-landfills (last accessed July 16, 2021).

[20] PathWater, *PET, the "Safe" Plastic*, https://drinkpathwater.com/blogs/news/is-pet-plastic-bpa-free#:~:text=PET%20plastic%20(polyethylene%20terephthalate)%20is,and%20inability%20to%20to%20process%20stress (last accessed July 16, 2021).









32.    Plaintiff reasonably understood, as do other reasonable consumers acting reasonably under the circumstances, that the representations on the Kirkland Signature packaging that "[t]his package is 100% recyclable" means that all components of the package, including the bottles and the component parts thereof, would be "100% recyclable."   The other Products containing the representation "100% Recyclable" lead a reasonable consumer to the same conclusion, all components of the bottle and packaging are "100% recyclable."   Defendant's representation that the Products are "100% recyclable" is false and misleading.

33.     Greenpeace USA, a non-profit environmental organization, recently conducted a comprehensive survey of plastic product waste recycling and reprocessing in the United States in order to determine the legitimacy of "recyclable" claims on labels for consumer plastic products.

34.     It is true that PET and HDPE are widely considered to be the "most recyclable" forms of plastic.  However, Greenpeace's survey found that as of 2017, United States domestic MRFs only have the capacity to process into plastic resin approximately: (i) 22.5% of the total post-consumer PET plastic waste generated; and (ii) 12% of the total post-consumer HDPE plastic waste generated.[21]

35.     Moreover, due to contamination and processing losses, about a third of the collected PET and HDPE material processed by MRFs cannot be converted into "clean flake," and is instead, landfilled and incinerated.[22]  Thus, the Products' PET bottles and HDPE bottle caps are not "100% Recyclable" as claimed by Defendant.

36.     Furthermore, PP and BOPP plastics, the materials used to make the Products' bottle caps and film labels, respectively, are widely considered to be among the *least* recyclable plastics.[23] [24]  Thus, acceptance by an MRF of PP and BOPP plastics is not proof that the materials

---

[21] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 10.
[22] Jan Dell, Plastic Pollution Coalition, *Six Times More Plastic Waste is Burned in U.S. than is Recycled*, https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled (Last accessed July 16, 2021).
[23] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 22.
[24] Fast Company, *Evian's New 100% Recycled Plastic Bottle Comes Without a Label*, https://www.fastcompany.com/90524283/evians-new-100-recycled-plastic-bottle-comes-without-a-label ("Labels [] are made from a different type of plastic than the PET used in bottles. At recycling facilities, bottles are separated from labels and from caps, which are made from a third type of plastic. While labels are technically recyclable, some facilities don't have the infrastructure to handle it; others don't bother.") (Last accessed July 16, 2021).

will actually be recycled into a new product.[25]   Instead, the majority of PP and BOPP sent to recycling facilities is incinerated or sent to landfills.   Accordingly, the Products' caps and labels are not "100% Recyclable."

37.     The nationwide recycling issues discussed herein are also particularly acute in New York.

38.     Only a very low percentage of plastic, including Defendant's Products, is actually recycled.   Take for example Southampton and East Hampton, New York.   One news report indicated that plastic bottles, such as Defendant's Products, "do not stand a chance."[26]   The article explains:

> [Plastic bottles and other] recyclables continue down the line before dropping into a massive compactor. The trash is then either pressed and packaged into 2-ton bales and shrouded in thick black tarp-like wrapping before being loaded onto flatbed trucks and transported to landfills in Virginia, Ohio, Pennsylvania or sent to an incinerator.
>
> None of those bales is recycled.[27]

39.     In fact, when it comes to plastic bottles such as the Products, "the vast majority of that material is never recovered. It ends up in a landfill."[28]

40.     Other areas in New York, such as Fort Edward, stopped accepting recyclables altogether.[29]   Instead, it "started shipping its recyclables to be burned in a regional trash incinerator."[30]

---

[25] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 16, 2021), at page 10.

[26] Cailin Riley, *What Happens To Our Recycling, Part One: The Recycling Myth*, November 27, 2018, https://www.27east.com/east-hampton-press/what-happens-to-our-recycling-part-one-the-recycling-myth-1632177/ (last visited 10/18/21).

[27] *Id.*

[28] *Id.*

[29] Brian Nearing, *Recycling Woes Pile Up*, July 28, 2018, https://www.timesunion.com/local/article/Recycling-woes-piling-up-13113765.php (last visited 10/19/21).

[30] *Id.*

41.     Indeed, the plastic film comprising the Products' labels is not recyclable in New York County.  The New York City Department of Sanitation explicitly states that "[f]ilm plastic", including "wrappers", is not accepted as part of the recycling program.[31]  For that reason alone, Defendant's "100% Recyclable" representation is false and misleading.  As the Sierra Club notes: "In a final irony, the polypropylene plastic film labels on which the '100 percent recyclable' claims are printed on the bottles are themselves completely unrecyclable."[32]

42.     Defendant's continued use of misleading and deceptive recyclability claims on its Products serves to defraud the public about plastic water bottles. It falsely and misleadingly suggests to reasonable consumers that when they purchase and dispose of Defendants' plastic water bottles in a municipal recycling bin, the Products' bottles will be recycled and re-used. In truth, Defendant's single-use plastics are not "100% Recyclable" and are damaging the environment even when consumers properly dispose of the bottles in a recycling bin.  If consumers knew the truth, they could make an informed decision about consuming products that are truly recyclable. Defendants' representations that the Products are recyclable are material, false, misleading, and likely to deceive members of the public.

43.     Pursuant to the Guides for use of Environmental Marketing Claims published the Federal Trade Commission (the "Green Guides"), "[it]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  Defendants' marketing of the Products as "100% Recyclable" violates these provisions of the Green Guides because it is false that 100% of the Products can be

---

[31] https://www1.nyc.gov/assets/dsny/site/services/recycling/what-to-recycle (last visited 10/19/21).
[32] https://www.sierraclub.org/sierra/plastic-bottlers-are-lying-about-recycling (last visited 10/19/21).

collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some programs, MRFs do not have the capacity to process the vast majority of the bottle components into reusable material.  And components of the package such as the label are not recyclable at all.

44.     Thus, Defendant "should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers."  16 C.F.R. § 260.12(b).

45.     The Green Guides are clear: "if any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable material, but because of fits shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable."  16 C.F.R. § 260.12(d).  Defendants' "100% Recyclable" representation violates this standard of the Green Guides because it fails to specify whether it refers to the bottles, the bottle caps, or the label. The caps and the labels are not an incidental component.  The fact that they are not recyclable makes the claim "100% Recyclable" false and misleading.

46.     In promulgating the current recycling definition, the Federal Trade Commission ("FTC") clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product *will be converted into, or used in, another product or package*.  *See* 63 Fed. Reg. 84 11 24247 (May 1, 1998) (emphasis added). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id*., at 24243.

47.     In promulgating the most recent version of the Green Guides, the FTC stated

(under the heading "Packages Collected for Public Policy Reasons but Not Recycled"), "[t]he Commission agrees that unqualified recyclable claims for categories of products that municipal recycling programs collect, but do not actually recycle, may be deceptive."[33]   As such, the FTC has stated that Defendant's practice of making unqualified recyclable claims on the Products is deceptive.

48.     The FTC continued that "[t]o make a non-deceptive unqualified claim, a marketer should substantiate that a substantial majority of consumers or communities have access to facilities that will actually recycle, not accept and ultimately discard, the product."[34]   Thus, marketers such as Defendant have an affirmative obligation to substantiate the recyclability of the Products.  Defendant has not so substantiated that consumers in New York in fact have access to facilities that will actually recycle the Products.  *See* 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims.").  "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendants do not possess information sufficient to support their claims that the Products are "100% Recyclable."

49.     Seeking to take advantage of consumer's concerns, Defendant markets and sells bottled water as "100% Recyclable," when the bottles cannot, in fact, be recycled as packaged for the reasons stated herein.  Defendant's actions violate the FTC Green Guide regulations, and by

---

[33] https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (last visited 10/19/21).
[34] *Id.*

extension, New York law.

50.     In short, Defendants' Products are not "100% Recyclable" because the plastic label components of the bottles are not "100% Recyclable", including in New York City where Plaintiff resides.  Further, given New York's low recycling rates, it is clear the Products are not, in fact, "100% Recyclable."

51.     New York law specifically incorporates the FTC Green Guides.  For example, 6 NYCCR § 368.1 states: "The purpose of this Part is to establish official recycling emblems for voluntary use and establish standards to be applied for the use of such emblems. The use of the terms 'recycled' 'recyclable' and 'reusable' independent of the emblem must be in conformance with the Federal Trade Commission's 'Guides for the Use of Environmental Marketing Claims' published in 16 CFR Part 260 (1992) or they are in violation of this regulation."  *See also* 6 NYCCR § 368.5 (explaining that "no person shall use the terms 'recycled,' 'recyclable' or 'reusable' for the promotion or advertisement of a package or product unless the term is used in conformance with the Federal Trade Commission's 'Guides for the Use of Environmental Marketing Claims' published in 16 CFR Part 260 (1992)").

52.     This Complaint therefore seeks to remedy Defendant's deceptive and misleading business practices with respect to the advertising, marketing and sales of the Products as "100% recyclable," when, in fact, they are not.

53.     Plaintiff purchased the Products in reliance on Defendant's false representations on the labels of the Products that the Products are "100% recyclable."  If Plaintiff had known that the Products were not 100% recyclable, Plaintiff would not have purchased the Products on the same terms.

## CLASS ALLEGATIONS

54.     Plaintiff seeks to represent a class defined as all persons in the State of New York who purchased the Products (the "Class").  Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

55.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

56.     **Numerosity.**  The members of the Class are geographically dispersed throughout the State of New York and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Class.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and/or third-party retailers and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

57.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

    (a)  Whether Defendant's Products are "100% Recyclable";

    (b)  Whether Defendant misleadingly and/or deceptively represented that the Products

are "100% Recyclable" and/or failed to inform class members that the Products are not "100% Recyclable";

(c) Whether Defendant's labeling, marketing, and promotion of the Products is false and misleading;

(d) Whether Defendant's conduct was fraudulent and/or amounts to negligent misrepresentation; and,

(e) Whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

58.    **Typicality.**  The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

59.    **Adequacy of Representation.**  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

60.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**<u>COUNT I</u>**
**Violation of New York G.B.L. § 349 (on behalf of Plaintiff and the Class)**

61.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

63.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

64.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

65.     Plaintiff and members of the Class are consumers who purchased products from Defendant for their personal use.

66.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products are "100% Recyclable", when in fact the Products are not completely recyclable.

67.     The foregoing deceptive acts and practices were directed at consumers.

68.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same. By representing the Products as "100% Recyclable," Defendant

not only misled Plaintiff but also misled a significant portion of the general consuming public and/or of targeted consumers acting reasonably under the circumstances.

69.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

70.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the Class have sustained from having paid for and used Defendant's Products.

71.     As a result of Defendant's violations, Plaintiff and members of the Class have suffered damages because they paid a price premium for the Products based on the materially misleading representation that the Products were "100% Recyclable," when in fact they are not. The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable water bottle products sold without the "100% Recyclable" representation, or through contingent variation study, or through other means regularly employed by economic and valuation experts.

72.     On behalf of herself and other members of the Class, Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**Violation of New York G.B.L. § 350 (on behalf of Plaintiff and the Class)**

73.     Plaintiff hereby incorporates the allegations contained in all preceding paragraphs of this complaint.

74.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

75.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

76.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

77.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

78.     These misrepresentations have resulted in consumer injury or harm to the public interest.

79.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 by misrepresenting that the Products are "100% Recyclable," when in fact they are not.  By representing the Products as "100% Recyclable," Defendants not only misled Plaintiff but also misled a significant portion of the general consuming public and/or of targeted consumers acting reasonably under the circumstances.

80.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

81.     This misrepresentation has resulted in consumer injury or harm to the public interest.

82.     As a result of Defendant's violations, Plaintiff and members of the Class have suffered damages because they paid a price premium for the Products based on the materially misleading representation that the Products were "100% Recyclable," when in fact they are not. The amount of the price premium can be reasonably quantified by an appropriate market study of

the prices for comparable water bottle products sold without the "100% Recyclable" representation, or through contingent variation study, or through other means regularly employed by economic and valuation experts.

83.     On behalf of herself and the members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, three times actual damages and reasonable attorneys' fees.

<u>**COUNT III**</u>
**Fraud (on behalf of Plaintiff and the Class)**

84.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

86.     As discussed above, Defendant misrepresented on the Products' labeling that they are "100% Recyclable," when in fact they are not.

87.     Defendant also engaged in material omissions because they knew, or reasonably should have known, that the Products were not, in fact, 100% recyclable.

88.     Defendant has fraudulently and deceptively led Plaintiff and Class members to believe that the Products are "100% Recyclable." Defendant also failed to inform Plaintiff and Class members that the Products are not "100% Recyclable," that approximately 30% of PET plastic recycled is lost due to contamination during the recycling process, that it is economically infeasible to recycle the bottle caps and plastic film labels, and that the bottle caps and plastic film labels must be disposed or incinerated.

89.     These misrepresentations and omissions were material at the time they were

made. They concerned material facts that were essential to the analysis undertaken by Plaintiff and the Class as to whether to purchase the Products.

90.     Defendant made identical misrepresentations and omissions to Plaintiff and members of the Class regarding the Products.

91.     The false and misleading representations and omissions were made with knowledge of their falsehood.  Nonetheless, Defendant continues to sell their non-recyclable Products to unsuspecting consumers.

92.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class to purchase the Products.  Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by paying less for the Products.

93.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class because Plaintiff and Class members would not have purchased the Products on the same terms if they had known the truth about the Products.

94.     Plaintiff and Class members are entitled to damages, punitive damages, and other legal and equitable relief as a result of Defendant's conduct.

## COUNT IV
**Breach of Express Warranty (on behalf of Plaintiff and the Class)**

95.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

96.     Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

97.     In representing that the Products were "100% Recyclable," Defendant provided false information to Plaintiff and Class members because the Products were not, in fact, 100% Recyclable.

98.     On July 23, 2021, Plaintiff provided Defendant with timely notice of this claim by letter that complied in all respects with U.C.C. § 2-607(3)(a). *See* **Exhibit A**.  To date, Defendant has made no attempt to cure the breach of express warranty.

99.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were "100% Recyclable" when in fact the Products were not, in fact, "100% Recyclable."

100.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the New York Subclass were damaged because they paid a price premium for the Products based on the materially misleading representation that the Products were "100% Recyclable," when in fact they are not.

101.    As a result of Defendant's conduct, Plaintiff and members of the Class are entitled to damages, as well as any other appropriate relief.

## <u>COUNT V</u>
### Unjust Enrichment (on behalf of Plaintiff and the Class)

102.    Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

103.    Plaintiff brings this claim individually and on behalf of members of the Class against Defendant.

104.    Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

105.    Defendant has knowledge of such benefits.

106.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products.  Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were "100% Recyclable."

107.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest in all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorney's fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 20, 2021                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By:      */s/ Andrew Obergfell*
                                                   Andrew Obergfell

                                           Andrew Obergfell (NY Bar No. 5458906)
                                           888 Seventh Avenue, Third Floor
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile:  (212) 989-9163
                                           E-mail: aobergfell@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Rachel L. Miller (*Pro hac vice* app. forthcoming)
                                           701 Brickell Ave., Suite 1420
                                           Miami, FL 33131
                                           Telephone: (305) 330-5512
                                           Facsimile:  (305) 676-9006
                                           E-mail: rmiller@bursor.com

                                           *Attorneys for Plaintiff*

# EXHIBIT A

# BURSOR & FISHER

P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

ANDREW OBERGFELL
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com

July 23, 2021

***Via United States Mail***

Niagara Bottling, LLC
1440 Bridgegate Dr.
Diamond Bar, CA 91765

Re:    *Notice and Demand Letter Pursuant to U.C.C. § 2-607; N.Y. G.B.L. §§ 349, 350; and all
        other applicable laws*

To Whom It May Concern,

        This letter serves as a preliminary notice and demand for corrective action by Niagara
Bottling, LLC ("Defendant," "Niagara," or "You") arising from breaches of warranty on behalf
of our client, Eladia Duchimaza, and a class of all similarly situated purchasers of Niagara
bottled water.  This letter serves as notice pursuant to U.C.C. § 2-607(3)(a) concerning the
breach of express warranty described herein. This letter additionally serves as notice of
violations of all applicable consumer protection laws, including, but not limited to, New York
General Business Law §§ 349 & 350.

        You have participated in the manufacture, marketing, and sale of Niagara Bottled Water
under several brand names, including Niagara, Costco Kirkland, Save Mart Sunny Select, and
Save Mart Market Essentials (the "Products").  The Products are marketed and sold as "100%
recyclable," when they are not.  A recent survey[1] by Greenpeace USA, a non-profit
environmental organization found that domestic manufacturing recycling facilities ("MRF"s")
only have the capacity to process into plastic resin approximately 22.5% of the total post-
consumer polyethylene terephthalate ("PET") plastic waste generated, and only 12% of the total
post-consumer high-density polyethylene ("HDPE") plastic waste generated in the United States.
Moreover, due to contamination and processing losses, about a third of the collected PET and
HDPE material processed by MRFs cannot be converted into "clean flake" material, and is
instead, landfilled and incinerated.[2]  Finally, the Product's labels, made of biaxially oriented
polypropylene ("BOPP") and bottle caps, made of polypropylene ("PP"), are widely considered

---

[1] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*,
https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf
(Last accessed July 22, 2021), at page 10.
[2] Jan Dell, Plastic Pollution Coalition, *Six Times More Plastic Waste is Burned in U.S. than is Recycled*,
https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-
recycled (Last accessed July 22, 2021).

to be among the least recyclable plastics.[3]   Accordingly, Defendant breached an express warranty appearing on the labeling of the Products because the bottles are not, in fact, "100% Recyclable."

Ms. Duchimaza purchased and used Costco Kirkland's bottled water in reliance on Niagara's express warranty stating that the Products were "100% Recyclable."  And Defendant breached these express warranties for the reasons stated herein.  *See* U.C.C. § 2-313.

Defendant's conduct also constitutes a deceptive business practice and false advertising under all applicable consumer protection laws, including, but not limited to, New York General Business Law §§ 349 & 350.

Ms. Duchimaza is acting on behalf of a class defined as all persons in the state of New York who purchased the Products.

To cure these defects, we demand that you (1) cease and desist from further sales of the mislabeled Products; (2) issue an immediate recall of the mislabeled Products; and (3) make full restitution to all purchasers of the Products.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning labeling of the Products;

2.      All documents concerning the advertisement, marketing, or sale of the Products;

3.      All documents concerning communications with any retailer involved in the marketing or sale of the Products;

4.      All documents concerning communications with purchasers of the Products;

5.      All documents concerning communications with federal or state regulators; and

6.      All documents concerning the total revenue derived from sales of the Products in the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me right away.  If I do not hear from you

---

[3] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (Last accessed July 22, 2021), at page 22.

promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

*Andrew J. Obergfell*

Andrew Obergfell