UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELADIA DUCHIMAZA,
*on behalf of herself and all others similarly situated,*

                                        Plaintiff,

                    v.

NIAGARA BOTTLING, LLC,

                                        Defendant.

21 Civ. 6434 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

    This case involves water bottles marketed as recyclable. Plaintiff Eladia Duchimaza ("Duchimaza"), a New York resident, brings this putative class action under New York law against defendant Niagara Bottling, LLC ("Niagara"), a Delaware corporation. She alleges that Niagara's representation that its water bottles (the "Products") are "100% Recyclable" is false and misleading. In fact, she alleges, not all components of the Products are made of recyclable material, and low recycling capacity in New York state makes the other components effectively non-recyclable. Duchimaza brings claims of (1) deceptive and unfair trade practices under New York General Business Law ("GBL") § 349, (2) false advertising under GBL § 350, (3) New York common law fraud, (4) breach of express warranty, and (5) unjust enrichment.

    Before the Court is Niagara's Rule 12(b)(1) and 12(b)(6) motion to dismiss Duchimaza's First Amended Complaint ("FAC"). For the reasons that follow, the Court grants that motion in full.

## I.    Background

### A.    Factual Background[1]

#### 1.    Parties

Duchimaza is a resident of New York City who purchased numerous multi-bottle packs of Niagara's Kirkland water bottles.[2]  FAC ¶ 18.  Although the date of her first purchase is not alleged, Duchimaza's most recent purchase was in July 2021.  *Id.*  Duchimaza made her purchases at a Costco store located at 517 E. 117 Street, New York, NY 10035.  *Id.*  She paid approximately $4 for each pack of Niagara's Kirkland bottled water.  *Id.*  The FAC alleges that in buying these, Duchimaza relied on the bottles' labels, which stated the Products were "100% Recyclable."  *Id.*  The FAC alleges that these labels led Duchimaza to believe that the entire Product, including its cap and label, was completely recyclable if she disposed of it in a recycling bin.  *Id.*  It further alleges that Niagara's claim is false because the label is not recyclable in Duchimaza's geographic area and because, based on national and statewide statistics, fewer than half the bottles she purchased would be recycled.  *Id.*

Niagara is a corporation organized under Delaware laws, with its principal place of business in Ontario, California.  *Id.* ¶ 20.  Niagara manufactures, markets, and sells beverages in the United States under several brand names, including Niagara, Costco Kirkland, Save Mart

---

[1] This account is drawn from the First Amended Complaint ("FAC"), Dkt. 18, and documents that the FAC incorporates by reference.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  For the purposes of resolving a motion to dismiss, the Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in plaintiff's favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] As discussed below, the Niagara Kirkland bottles are one of Niagara's Products.  Each makes a claim as to its recyclability on its label or packaging.  Duchimaza is alleged to have purchased only the Niagara Kirkland brand bottles.  FAC ¶ 18.

Sunny Select, and Save Mart Market Essentials, all of which the FAC refers to as the "Products." *Id.* ¶¶ 1 n.1, 20.

### 2.    Allegations that Niagara Bottles are Not "100% Recyclable"

The FAC alleges two theories why Niagara's claim that its Products are "100% Recyclable" is false.  First, it alleges, the labels attached to each bottle are not recyclable.  *Id.* ¶ 1.  Second, it alleges, limitations in the recycling system prevent even the recyclable components from being recycled.  *Id.* ¶ 6.  These, the FAC contends, make Niagara's representation that its Products are "100% Recyclable" false and misleading.  *Id.* ¶ 1.

#### a.    *Allegations that bottle labels and some caps are not recyclable*

Each Product manufactured by Niagara has three plastic components: the bottle, the bottle cap, and the label wrapped around the bottle.  *Id.* ¶ 30.  The bottle is made from polyethylene terephthalate (PET, #1 plastic).  *Id.*  Some caps are made from high-density polyethylene (HDPE, #2 plastic).[3]  Both of these materials are among "the most recyclable forms of plastic."  *Id.* ¶ 34.

The FAC alleges that some bottle caps and the labels are comprised of PP plastic and biaxially oriented polypropylene (BOPP) plastic, a form of PP, which are "among the *least* recyclable plastics."  *Id.* ¶¶ 30, 35–36 (emphasis in original).  PP and BOPP, the FAC alleges, cannot be recycled into reusable materials.  *Id.* ¶ 6.  The majority of PP sent to recycling facilities is incinerated or sent to landfills rather than recycled.  *Id.* ¶ 36.  The FAC alleges that the labels, specifically, are not recyclable in New York County, where the New York City Department of Sanitation states that "'film plastic,' including 'wrappers,' is not accepted as part

---

[3] The FAC cites a statement from Niagara's website stating "All of our bottles are produced using . . . High-Density polyethylene (HDPE) caps."  FAC ¶ 6 n.6.  However, because the FAC contains allegations that some of the caps contain PP plastic, *see id.* ¶ 30, the Court construes the FAC as alleging that Niagara caps are made of either HDPE or PP plastic.

of the recycling program." *Id.* ¶ 41. The Sierra Club has described bottle labels on which such "100% Recyclable" claims are printed as "completely unrecyclable." *Id.* ¶ 11.

> b. *Allegations that recycling center capacity limits prevent the Products from being recycled*

The FAC also alleges that the components of the Products made of materials capable of being recycled—the bottles and HDPE caps—are not in fact recycled due to the limited capacity of the nationwide recycling system, and particularly, the recycling plants in Duchimaza's area. *Id.* ¶¶ 1, 7–8. For this reason, too, it alleges, the Products are not "100% Recyclable." *Id.* ¶ 1.

Historically, facilities in the United States transported plastic waste to China to be recycled. *Id.* ¶ 26. In 2018, however, China began to limit the amount of plastic waste it would accept from the United States. *Id.* ¶ 27. This had a "significant and overwhelming effect" on American municipal recycling facilities ("MRFs"). *Id.* MRFs usually collect recyclable waste through curbside pickup where it is then transported to a facility to be processed. *Id.* ¶ 28. The FAC alleges that MRFs both in New York and nationwide began refusing to accept certain types of plastic and implementing stricter quality standards. *Id.* ¶ 29. Therefore, the FAC alleges, acceptance by an MRF does not mean that a product will be recycled. *Id.*

The FAC cites various statistics to support its claim of limited recycling capacity. In general, it alleges, nearly 90% of all plastic waste is not recycled. *Id.* ¶ 4. And American recycling facilities can process only 22.5% of the PET and HDPE in the United States. *Id.* ¶ 6.[4] When these plastics are recycled, the FAC alleges, 28% of PET bottles and HDPE caps are lost or irrevocably tainted in the process, rendering them not recyclable. *Id.* In the same vein, the

---

[4] The FAC also alleges that, as of 2017, MRFs in the United States could process only 22.5% of PET *and 12%* of HDPE plastic waste generated by consumers. *Id.* ¶ 34.

FAC alleges that "about a third" of PET and HDPE collected by MRFs cannot be properly processed due to contaminations and losses. *Id.* ¶ 35.

The FAC alleges these recycling problems are "particularly acute in New York," where only a small percentage of plastics, including Niagara's Products, is recycled. *Id.* ¶ 37. The FAC does not allege statistics specific to New York State's recycling capacity, but provides anecdotal accounts from local news to the effect that certain communities fail to recycle. *Id.* ¶¶ 38–40. For example, a local news article stated that plastic bottles in Southampton and East Hampton "do not stand a chance" of being recycled as they are sent to landfills or incinerated. *Id.* ¶ 38. The "vast majority" of these plastic bottles, the FAC alleges, ends up in landfills. Similarly, the FAC alleges that Fort Edward stopped accepting recyclable materials altogether and instead ships waste elsewhere to be incinerated. *Id.* ¶ 40.

### 3. Niagara's 100% Recyclability Claims

The FAC alleges that Niagara knows that its products are made of unrecyclable materials or end up in landfills and yet continues to market its products as "100% Recyclable." *Id.* ¶ 12.



*Packaging on bottles, FAC ¶ 31.*

Niagara makes this representation, the FAC alleges, to "capitalize" on demand for environmentally friendly products. *Id.* ¶ 15. It alleges that Niagara intends for reasonable consumers to believe—and reasonable consumers do believe—that the products will be recycled if disposed of in a recycling bin. *Id.* And, it alleges, Niagara "failed to inform [Duchimaza] . . . that approximately 30% of PET recycled is lost due to contamination during the recycling process, that it is economically infeasible to recycle the bottle caps and plastic labels, and that the bottle caps and plastic film labels must be disposed or incinerated." *Id.* ¶ 88. The FAC alleges, generally, that such "false and misleading representations and omissions were made with knowledge of their falsehood." *Id.* ¶ 91.

The FAC alleges Duchimaza purchased the Products in reliance on the representations on the labels of the Products that the Products are "100% Recyclable." *Id.* ¶ 53. Had she known the bottles were not in fact "100% Recyclable," the FAC alleges, Duchimaza would not have paid a price premium, quantified as the difference in value between the Products as represented and the value of the Products she received. *Id.* ¶ 18.[5] The FAC alleges that Duchimaza desires to purchase Niagara's Products in the future but cannot rely on its representation that they are "100% Recyclable." *Id.* ¶ 19. Therefore, it alleges, Duchimaza faces the risk of future harm without injunctive relief compelling Niagara to remove its misleading recyclability claims. *Id.*

In addition to the Kirkland Signature brand bottles that Duchimaza purchased at Costco, the FAC alleges that Niagara has falsely and misleadingly marketed its other Products as "100% Recyclable," too. *Id.* ¶ 31:

---

[5] The FAC alleges that the amount of this price premium can be established through a market study of the price of bottles sold without a "100% Recyclable" representation. FAC ¶ 71.







The FAC alleges that the "100% Recyclable" representations on various Niagara Products would lead a reasonable consumer to conclude that all components of the bottle and packaging are fully recyclable. *Id.* ¶ 32. Similarly, it alleges that if other consumers knew the products were not "100% Recyclable" and were damaging the environment, they would make "an informed decision about consuming products that are truly recyclable." *Id.* ¶ 42. Although Duchimaza purchased only Niagara's Kirkland Signature brand bottled water, *id.* ¶ 18, she seeks to represent all persons in New York State who purchased Niagara products marketed with similar recyclability claims, *id.* ¶ 54. The FAC estimates that this class would consist of tens of thousands of consumers. *Id.* ¶ 56.

### B.      Procedural History

On July 23, 2021, Duchimaza sent Niagara a letter demanding corrective action. *Id.* ¶ 98, Ex. A.  On July 28, 2021, Duchimaza filed her initial complaint against Niagara Bottling, LLC. Dkt. 1.  On October 1, 2021, Niagara filed a motion to dismiss the complaint. *See* Dkts. 13–16. On October 4, 2021, the Court issued an order directing Duchimaza to amend her complaint or file an opposition to the motion to dismiss, and advised that further opportunities to amend would not likely be granted.  Dkt. 17.

On October 20, 2021, Duchimaza filed the FAC.  Dkt. 18.  On November 12, 2021, Niagara filed its motion to dismiss the FAC, Dkt. 19, a memorandum of law, Dkt. 21 ("Def. Mem."), and the declaration of Creighton R. Magid, Esq., Dkt. 20 ("Smith Decl."), and attached exhibits.  On December 2, 2021, Duchimaza filed her opposition, Dkt. 28 ("Pl. Mem.").  On December 10, 2021, Niagara filed its reply, Dkt. 29 ("Def. Reply").  On January 25, 2022, the Court held a telephonic argument. *See* Dkt. 35 ("Oral Arg. Tr.").

## II.      Legal Standards Governing the Motion to Dismiss

Niagara moves to dismiss Duchimaza's FAC for lack of standing, under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, under Rule 12(b)(6).

### A.      Rule 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), a district court must have "the statutory or constitutional power to adjudicate" the matter at issue. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015).

Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[B]ecause standing is necessary to [the Court's] jurisdiction, [the Court is] obliged to decide the question at the outset." *Strubel v. Comenity Bank*, 842 F.3d 181, 187–88 (2d Cir. 2016). "If [a] plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear [his or her] claim," requiring that the case be dismissed. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quotation omitted); *see also Cortlandt St. Recovery Corp. v. Hallas Telecomm'ns S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015). A plaintiff must "demonstrate standing for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).

"[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" each element of constitutional standing. *Id.* (citations omitted). Because "the elements of Article III standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotations, alterations, and citations omitted).

11

### B.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Niagara's 12(b)(1) Motion

Niagara makes three arguments why Duchimaza lacks standing and the Court thus lacks subject matter jurisdiction.  These are that the FAC does not adequately plead: (1) an injury-in-fact sufficient to support her damages claims, (2) a risk of future injury sufficient to support her claims for injunctive relief, and (3) standing as to her class claims.  Def. Mem. at 8, 11, 16.

### A.    Injury-in-Fact

Niagara argues that the FAC does not allege a cognizable injury in fact sufficient to support its damages claims because it does not allege that the particular bottles she purchased and placed in a recycling bin were not in fact recycled.  *Id.* at 9.  Duchimaza counters that such a pleading was not required, and that the damages claims allege a cognizable economic injury: that

she paid a price premium for the Products, based on the misrepresentation that they were "100% recyclable." Pl. Mem. at 5–6.

To plead an injury-in-fact, a plaintiff must plead: "[1] an invasion of a legally protected interest [2] which is concrete and particularized, and [3] actual or imminent, not conjectural or hypothetical." *Kelen v. Nordstrom, Inc.*, 259 F. Supp. 3d 75, 79 (S.D.N.Y. 2016) (quoting *Lujan*, 504 U.S. at 560). To demonstrate a concrete injury, a plaintiff must show that it "actually exist[s]," meaning it is "real, and not abstract." *Strubel*, 842 F.3d at 188 (internal quotations omitted). To demonstrate particularity, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Niagara faults Duchimaza for not pleading that the Niagara water bottles she claims to have purchased and placed in a curbside recycling bin were not recycled. Def. Mem. at 9. As Niagara notes, there is authority finding no injury-in-fact where the plaintiff's theory of injury turned on a particular purchase but the plaintiff did not plead deficiencies in the item bought.[6] But Niagara misconstrues the FAC's claim of injury. It does not allege that the Products she

---

[6] *See, e.g., Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030–31 (8th Cir. 2014) (purchasers of "100% kosher" hot dogs lacked standing where some of defendant's products were tainted with non-kosher meat but it was "pure speculation to say the particular packages sold to the [plaintiffs] were tainted by non-kosher beef" and "it [wa]s quite plausible [defendant] sold the [plaintiffs] exactly what was promised.") (emphasis omitted); *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 18 Civ. 300, 2019 WL 1338724, at *2 (N.D.N.Y. 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well."); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19 Civ. 03052, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels.") (emphasis in original); *Phan v. Sargento Foods, Inc.*, No. 20 Civ. 09251, 2021 WL 2224260, at *4 (N.D. Cal. June 2, 2021) (no standing where "systemic" manufacturing problem had tainted some products but plaintiff could not allege that he "purchased one of these products"); *Doss v. General Mills, Inc.*, 816 F. App'x 312, 314 (11th Cir. 2020) (plaintiff lacked standing to pursue claims relating to glyphosate in Cheerios because she "has not alleged that she purchased any boxes of Cheerios that contained *any* glyphosate") (emphasis in original).

purchased were not recycled.  It alleges that Duchimaza paid a "price premium" for the Products

because Niagara's allegedly false and misleading "100% Recyclable" claim drove up the sales

price of the Products.  FAC ¶ 18; *see also* Pl. Mem. at 5.

That allegation is sufficient to plead an injury in fact.  "Substantial economic harm is

plainly the type of injury for which parties may seek redress in federal court." *United States. v.*

*Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999); *see also Kacocha v. Nestle Purina*

*Petcare Co.*, No. 15 Civ. 5489 (KMK), 2016 WL 4367991, at \*7 (S.D.N.Y. Aug. 12, 2016)

(paying price premium price an "adequate injury for purposes of standing."); *In re Bayer Corp.*

*Combination Aspirin Prods. Mktg and Sales Practices Litig.*, 701 F. Supp. 2d 356, 377

(E.D.N.Y. 2010) ("Economic injuries are sufficient for standing.  Moreover, courts have long

held that a plaintiff is injured, suffering an ascertainable loss, when he receives less than what he

was promised."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14 Civ. 5029 (NSR), 2015 WL

2168374, at \*12 (S.D.N.Y. May 7, 2015) ("Plaintiffs have also adequately alleged injury by

claiming that they paid a price premium that they would not have paid if the products were not

labeled 'natural' or 'all natural.'").  And the FAC plausibly alleges that Duchimaza bought

Products—bottled Niagara water—whose price was inflated.  FAC ¶ 1.

The Court therefore rejects Niagara's challenge to Duchimaza's standing to bring her

damages claims.

## B.    Standing for Injunctive Relief

Niagara next argues that Duchimaza lacks standing to pursue injunctive relief because the

FAC does not allege a real or immediate threat of future injury.  Def. Mem. at 16–18.

Under Article III, "a plaintiff must demonstrate standing for each claim and form of relief

sought." *Cacchillo*, 638 F.3d at 404 (internal quotations omitted).  To obtain injunctive relief, a

plaintiff must demonstrate injury in fact, causation, and redressability. *Id.*  A plaintiff fails to do

so where she is unable to establish "a 'real or immediate threat' of injury.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)); *see also Izquierdo v. Mondelez Int'l Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016). An allegation of "*possible* future injury," or of "past exposure to illegal conduct," is insufficient to clear this bar. *Lugones v. Pete and Gerry's Organic*, LLC, 440 F. Supp. 3d 226, 238 (S.D.N.Y. 2020) (emphasis in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lyons*, 461 U.S. at 102). And a claim to sue on behalf of a putative class does not excuse a plaintiff's failure to demonstrate future injury to herself. *Buonasera v. Honest Co., Inc.*, 208 F. Supp 3d 555, 564 (S.D.N.Y. 2016) (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). Rather, the "named plaintiffs must have standing in order to seek injunctive relief on behalf of the class." *Id.*

To the extent it attempts to assert future injury, the FAC alleges that Duchimaza "will be unable to rely on Defendant Niagara's 100% recyclable claim in the future unless appropriate injunctive relief is entered." FAC ¶ 19. But, critically, the FAC does not plead that Duchimaza intends to repurchase the bottles. Instead, it pleads only that she "desires to purchase water bottles from Defendant Niagara that are, in fact, 100% recyclable, but cannot rely on Defendant Niagara's representations regarding recyclability." *Id.*

These allegations, although rectifiable, do not plead an injury-in-fact to support injunctive relief. They mirror pleadings that courts in this Circuit repeatedly have held insufficient where a consumer plaintiff has sought to enjoin the further sale of a deceptively marketed product she purchased. As these courts have held, allegations that the plaintiff would purchase a product *if* re-engineered or re-marketed does not plead a real or immediate threat of future injury. *See, e.g., Lugones*, 40 F. Supp. 3d at 238 (no standing to pursue injunctive relief

where plaintiffs alleged they would not buy eggs unless defendant "change[d] its practices to mirror its advertising"); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021) ("[Plaintiff] contends that she would purchase the soymilk product in the future if she 'could trust the label.' Drawing all reasonable inferences in plaintiff's favor, this contention is still insufficient to confer standing."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (no standing where "the injury alleged . . . is *hypothetical—if* they choose to purchase Godiva's products in the future, *then* they *may* be harmed.") (emphasis in original); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 356 (S.D.N.Y. 2020) (promise to "purchase a product if re-engineered or re-marketed does not show a real or immediate threat of future injury"); *see also Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 101 (E.D.N.Y. 2020) ("Because plaintiffs admit that they are unlikely to purchase the products at issue, unless the products are changed, they lack standing to seek injunctive relief.").[7]

Because the FAC does not allege that Duchimaza intends to purchase the product as currently labeled, it does not allege an injury sufficient to supply standing to enjoin future sales of the Products. *See Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 538 (S.D.N.Y. 2021).

### C.    Duchimaza's Standing as to Products She Did Not Purchase

Finally, the FAC contains claims by Duchimaza on behalf of a putative class of persons who purchased the Products in New York State. FAC ¶ 54. The putative class as defined extends to New York purchasers of Niagara products other than the Kirkland Signature brand

---

[7] *But see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961 (9th Cir. 2018) ("We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.") (quoting *Summers v. Earth Island Inst.*, 55 U.S. 488, 493 (2009)).

water bottles which Duchimaza claims to have bought. *Id.* ¶ 1. Niagara argues that Duchimaza lacks standing to pursue class claims on behalf of persons who purchased Niagara products that she did not buy, including because the FAC does not allege that the labeling on or composition of the other products tracked that of the Kirkland Signature brand bottles. *See* Def. Mem. at 14. Duchimaza argues that this issue should be deferred to the class certification stage. Opp. at 9.

Inasmuch as the Court, below, dismisses Duchimaza's surviving (damages) claims for failure to state a claim, the Court does not have any occasion to address the extent to which she would otherwise have had standing to represent a putative class.[8] Nor is there occasion to address the issue, which the parties debate, whether Niagara's bid to prune the class is better resolved on a Rule 12(b)(1) motion or later, on a Rule 23 motion for class certification.[9]

## IV.   Niagara's 12(b)(6) Motion

Niagara moves to dismiss the FAC's damages claims, which are for violations of New York GBL §§ 349 and 350, and for fraud, breach of express warranty, and unjust enrichment.

### A.   Claims Under New York GBL §§ 349 and 350

Niagara moves to dismiss the FAC's claims under the GBL on the ground that the FAC does not plausibly allege that the "100% Recyclable" statement is false or likely to mislead a reasonable consumer. Niagara relatedly argues that its statements comply with the Federal Trade Commission's Green Guides, which the GBL incorporates, and that this shields it from liability.

---

[8] With one exception: Duchimaza's claim of breach of express warranty, the one claim as to which the Court grants leave to replead, by law may not brought on a class basis. *See infra* n.19.

[9] Several district courts have interpreted *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) and *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27 (2d Cir. 2014) (summary order) to favor deferring resolving class standing until a class certification is made. *See Buonasera*, 208 F. Supp. 3d at 562 (collecting cases); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013); *see also Hart v. BHH, LLC*, No. 15 Civ. 4804 (WHP), 2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016).

### 1.    Applicable Legal Principles

GBL §§ 349 and 350 prohibit, respectively, "[d]eceptive acts or practices in the conduct

of any business, trade or commerce or in the furnishing of any service," and "[f]alse advertising

in the conduct of any business, trade or commerce or in the furnishing of any service" in New

York State.

To state a claim under GBL § 349, a plaintiff must allege that "(1) the defendant's

deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3)

the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.

2000) (per curiam).  Although GBL § 350 is specific to false advertising, its standards are

identical to those of § 349.  *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 395 (N.Y. App. Div. 2010)

(quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002)); *see also Braynina*

*v. TJX Cos.*, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016)

("[C]ourts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential

elements are the same[.]") (internal citation omitted); *Orlander v. Staples, Inc.*, 802 F.3d 289,

300 (2d Cir. 2015) (treating standards as the same); *Koch v. Acker, Merrall & Condit Co.*, 18

N.Y.3d 940, 941 (2012) (same).  Claims under GBL §§ 349 and 350 need not meet the

heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Lugones*, 440 F. Supp. 3d.

at 240.

It is a "complete defense" to liability under GBL §§ 349 and 350 that an "act or practice

is . . . subject to and complies with the rules and regulations of, and the statutes administered by,

the federal trade commission or any official department, division, commission or agency of the

United States."  GBL § 349(d); *see also id.* § 350(d) (similar language).  The regulations on

which Niagara relies here are "the Green Guides" promulgated by the FTC, 16 C.F.R. § 260.12,

which "establish[] commercial practices regarding recyclability claims." *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 846 (N.D. Cal. 2019).

### 2.    Discussion

The FAC alleges that the "100% recyclable" representation on the Products is false or misleading in two respects, so as to violate GBL §§ 349 and 350.  First, it alleges that recycling facilities in New York State lack sufficient capacity to actually recycle the Products.  Second, it alleges that, although the translucent bottle itself is recyclable, the cap and label components of Niagara's bottles are comprised of plastics that are either difficult to recycle or not recyclable.

To determine whether a statement is materially misleading under the GBL, a court must undertake an objective inquiry to determine if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)); *see also Orlander*, 802 F.3d at 300.  Where the material facts are undisputed, a court may be able to decide this question as a matter of law.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741–42 (2d Cir. 2013) (affirming dismissal where "[p]laintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss"); *Yu v. Dreyer's Grand Ice Cream, Inc.*, No. 20 Civ. 8512 (ER), 2022 WL 799563, at *6 (S.D.N.Y. Mar. 16, 2022) (finding no reasonable consumer would be misled where product's coating labelled "100% chocolate" also contained other ingredients).

The parties agree that the term "recyclable" is a term of art and that the FTC's Green Guides inform its meaning.  *See* Def. Mem. at 17; Pl. Opp. at 13.  These state that:

> A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. . . . Marketers should clearly and prominently qualify recyclable

claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers.

16 C.F.R. § 260.12(a),(b).  Important here, the Green Guides contain two exceptions to this rule. First, marketers may make unqualified recyclable claims provided that "recycling facilities are *available* to a substantial majority of consumers or communities where the item is sold." *Id.* § 260.12(b)(i) (emphasis added).  The Green Guides define a substantial majority of consumers as "at least 60%." *Id.*  Second, marketers may make unqualified claims where "the entire product or package, excluding minor incidental components, is recyclable." *Id.* § 260.12(c)

Relying on the Green Guides, Niagara argues that the FAC's two theories why Niagara's statement is false or misleading are deficient.  As to the first, regarding New York's recycling capacity, Niagara argues that the FAC wrongly construes *recyclability* to mean *actually recycled*, and does not plead facts sufficient to support the unavailability of recycling facilities within the meaning of the Green Guides.  As to the second, regarding the caps and labels on its bottles, Niagara argues that these are properly classified as "minor incidental components," and thus need not be recyclable for a claim of "100% recyclable" to be accurate.

### a.   *"Recyclability" of the water bottles*

The FAC acknowledges that PET and HDPE, the types of plastic used to make the bottles and some bottle caps, respectively, "are widely considered to be the 'most recyclable'" plastics.[10] FAC ¶¶ 30, 34, 36.  To the extent that these types of plastic are used, the use of such materials would not support a claim of non-recyclability—a point Duchimaza concedes.  See Oral Arg. Tr. at 33–34; *see also OED Online, Oxford Univ. Press* (June 2022) (defining "recyclable" as "[c]apable of being recycled").  But the FAC claims that, notwithstanding that the bottles are

---

[10] The FAC alleges at one point that some Niagara's caps are made of the less-recyclable BOPP, ¶ 35, and at another that *all* are made with HDPE, *id.* ¶ 6 n.6.  For purposes of this decision, the Court assumes that some caps are made of BOPP and others with HDPE.

composed of recyclable plastic, Niagara's claim of their "100% recyclability" is actionably misleading because only a small percentage of such bottles are in fact recycled in New York.

That theory relies instead on a flawed reading of the Green Guides. Duchimaza argues that, for a statement claiming recyclability to comply with the Green Guides, the products at issue must "*in fact* be recycled." *See* Pl. Opp. Memo. at 15. But the focus of the Green Guides is on the availability of recycling facilities, not the incidence of recycling. To that end, the Green Guides state that "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers . . . [w]hen *recycling facilities are available* to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims." 16 C.F.R. § 260.12(b)(1) (emphasis added). The Green Guides explain further that marketers may qualify their claims by stating, for example, "Recycling facilities for this product [package] may not *exist* in your area." *Id.* (emphasis added). Inasmuch as the Green Guides' focus is explicitly on the availability and existence of recycling programs and collection sites, whether a recyclability claim is misleading turns not on the incidence of recycling, but whether a substantial majority of consumers *can* place such products into the recycling stream.

The FAC, however, does not contain any allegations to this effect. It does not allege that recycling facilities do not *exist* in Duchimaza's community—whether defined as New York City, New York State, or some other subdivision of the state—or are available to fewer than the 60% of consumers that the Green Guides use as the minimal definition of a "substantial majority." For this reason, the FAC's first theory fails to state a claim.

In any event, assuming that a claim of "100% recyclability" could be misleading based not on the limited availability of recycling facilities but on the limited incidence of recycling in

fact—and such a theory of liability would not align easily with the dictionary definition of "recyclability" as meaning "capable of being recycled,"—the FAC does not plead sufficient facts to support it, either. The FAC challenges the sale of Niagara Products with respect to New York consumers only. *See* FAC ¶ 1. But, to support its claim that MRFs "do not have the capacity to process the vast majority of the bottle components into reusable material," *id.* ¶ 43, the FAC does not cite statistics as to New York State; it cites *nationwide* statistics, *see id.* ¶ 34. That MRFs nationwide have the capacity to process only 22.5% of PET and 12% of HDPE post-consumer plastic waste, *id.*, does not speak to whether New York's recycling capacity is synchronous with the nation's, or what the incidence of recycling such materials is in this state, *see* Oral Arg. Tr. at 38–39 (conceding that nothing in FAC says "that in New York State [recycling] facilities are available to fewer than 60 percent of [New York consumers]").[11]

### b. The caps and the labels

The FAC alternatively alleges that the Products are not "100% recyclable" based on their caps and labels. It alleges that some caps are made of PP plastics, and that all labels are made of BOPP plastics, and that these are "widely considered to be among the *least* recyclable plastics." FAC ¶¶ 30, 36. As to the labels, in particular, the FAC alleges that "the plastic film comprising the Products' labels is not recyclable in New York County." *Id.* ¶ 11.

The issue is whether these components qualify as "minor incidental components" of the Products. The Green Guides permit marketers to make unqualified recyclability claims "if the entire product or package, excluding minor incidental components, is recyclable." 16 C.F.R.

---

[11] The FAC's references to news articles about several communities within New York State with problematic recycling practices does not fill this void. *See* FAC ¶¶ 8 (bottles in Southampton and East Hampton "do not stand a chance [of being recycled]."); 10 (recyclable materials in Fort Edward incinerated). And Duchimaza made her Niagara purchases in New York City, not in these communities.

§ 260.12(c). Niagara argues that the cap and labels are "minor, incidental components" and that its "100% recyclable" statement need not be qualified. Def. Mem. at 19. Duchimaza disputes that the caps and labels so qualify. *See* Pl. Opp. at 15–16.

As to the bottle caps, Niagara is clearly correct. Indeed, the Green Guides use bottle caps as an example of a "minor, incidental component." *See* 16 C.F.R. § 260.3(b) ("A soft drink bottle is labeled 'recycled.' The bottle is made entirely from recycled materials, but the bottle cap is not. Because the bottle cap is a minor, incidental component of the package, the claim is not deceptive.").[12] Therefore, even assuming that some Niagara bottle caps (those made of PP) are not recyclable, this component is outside the reach of the Green Guides, which, the parties agree, guides the reach of GBL §§ 349 and 350.[13]

The labels present a question whose answer is less certain, because, unlike with respect to bottles, the Green Guides do not use labels to illustrate the meaning of a "minor incidental" component. The Green Guides also do not define this term. The Court accordingly considers the term's ordinary dictionary meaning, as required when a statutory or regulatory term is undefined. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).

The Cambridge Dictionary defines "minor" as "having little importance, influence, or effect," and "incidental" as "less important than the thing something is connected with or part

---

[12] The Green Guides recognize "there may be exceptions to this general principle. For example, if a marketer makes an unqualified recyclable claim, and the presence of the incidental component significantly limits the ability to recycle the product, the claim would be deceptive." 16 C.F.R. § 260.3. The FAC, however, does not contain factual allegations along this line.

[13] Attempting to undermine this result, Duchimaza terms § 260.3 "an unrelated section of the Green Guides" that has no bearing on a recyclability claim. Pl. Mem. at 15–16. That is wrong, as § 260.3 states that its "principles apply to all environmental marketing claims, including those described in §§ 260.4 through 240.16," including 260.12, which addresses recyclability claims.

of."[14]  Other dictionary definitions are in accord.[15]  *See id.* at 568.  By this measure, the label on

a Niagara bottle of water, as described and depicted in the FAC, qualifies as "minor and

incidental."  The label does not contribute to a bottle's functionality, is thin to the point of being

two-dimensional, and is completely removable.  Relative to the bottle, the label is patently

inferior in size, degree and importance.

The Green Guides' treatment of bottle caps reinforces this conclusion.  In contrast to the

label, a bottle cap serves a vital functional role, in securing the contents of the bottle.  The cap is

also more solid than the label and is three-dimensional, not two.  Yet, per the Green Guides, the

cap is a "minor and incidental" component of a bottle—indeed, the paradigmatic example used

to illustrate this concept.  The label is more consequential than the cap only insofar as it contains

informational content, a point not germane to recyclability.

---

[14] *Minor*, Cambridge, https://dictionary.cambridge.org/us/dictionary/english/minor (last visited July 18, 2022).  *Incidental*, Cambridge, https://dictionary.cambridge.org/us/dictionary/english/incidental (last visited July 18, 2022).

[15] *See, e.g.*, Merriam-Webster, https://www.merriam-webster.com/dictionary/incidental (last visited July 14, 2022)) (defining "incidental" as "subordinate or secondary in importance or position."); Merriam-Webster, https://www.merriam-webster.com/dictionary/incidental (last visited July 14, 2022) (last visited July 14, 2022) (defining "minor" inferior in importance, size, or degree or comparatively unimportant); Black's Law Dictionary (11th ed. 2019) (defining "incidental" as "subordinate to something of greater importance"); Oxford's Lexico U.S. Dictionary, https://www.lexico.com/en/definition/incidental (last visited July 14, 2022) (defining "incidental" primarily to mean "accompanying but not a major part of something"); Oxford's Lexico U.S. Dictionary, https://www.lexico.com/en/definition/minor (last visited July 14, 2022) (defining "minor" to mean "lesser in importance, seriousness, or significance").

Accordingly, the Court finds that the label is a minor, incidental component. Like the cap, it need not be recyclable for Niagara to market the Product as "100% Recyclable" without qualification.[16]

The FAC accordingly does not state a claim of under GBL §§ 349 and 350, because the representation that the Niagara Product is "100% recyclable" is not plausibly pled to be false or misleading. The Court therefore dismisses the FAC's GBL claims.

### B.   Fraud

Niagara next moves to dismiss the FAC's common law fraud claim.

#### 1.   Applicable Legal Principles

To establish fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)).

"In addition, a claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 327 (S.D.N.Y. 2006)). Federal Rule of Civil Procedure 9(b)

---

[16] The parties spar over whether the New York City Department of Sanitation's non-acceptance of "film plastic, including wrappers" includes the labels on the bottles (as opposed to only the shrink wrap packaging for the bottles). Duchimaza says no, *see* FAC ¶ 11; Pl. Mem. at 2–3; Niagara says yes, *see* Def. Mem. at 5–6. For the purposes of resolving the motion to dismiss, the Court treats the FAC's allegation as true. That, however, does not disturb the Court's assessment that the label qualifies as "minor and incidental" within the meaning of that Green Guides term.

provides that where "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Particularity "requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Glob. Master Fund*, 375 F.3d at 187 (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).

Rule 9(b)'s heightened pleading standard for fraud does not apply to the element of fraudulent intent: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit has cautioned, however, that courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (alteration in original) (quoting *Acito v. IMCERA Grp.*, 47 F.3d 47, 52 (2d Cir. 1995)). Such a "strong inference" can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91 (quoting *Shields v. Citytr. Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). To determine whether the "strong inference" requirement is met, a court should "consider the complaint in its entirety and take into account plausible opposing inferences." *Loreley*, 797 F.3d at 177 (internal quotation marks and citation omitted). If the inference is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged," then it is sufficiently strong. *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).

## 2.    Discussion

Niagara argues that the FAC's fraud claim should be dismissed because, *inter alia*, the FAC does not allege facts sufficient to give rise to a strong inference of fraudulent intent. *See* Def. Mem. at 21–22; Def. Reply at 8.[17]  Niagara is correct.

As to this point, the FAC alleges the following.  Niagara "misrepresented on the Products' labeling that it was '100% Recyclable' when in fact they are not" and thereby "engaged in material omissions because they knew, or reasonably should have known, that the Products were not, in fact, 100% recyclable." FAC ¶¶ 86–87.  Niagara "failed to inform Plaintiff . . . that approximately 30% of PET recycled is lost due to contamination during the recycling process, that it is economically infeasible to recycle the bottle caps and plastic labels, and that the bottle caps and plastic film labels must be disposed or incinerated." *Id.* ¶ 88.  Niagara's "false and misleading representations and omissions . . . were made with knowledge of their falsehood," *id.* ¶ 91, and "were intended to induce and actually induced Plaintiff and members of the proposed Class to purchase the Products," *id.* ¶ 92.

As Niagara rightly diagnoses, these allegations are general and conclusory.  That alone would not require dismissal.  Even where there are "general statements of intent, a plaintiff's pleadings can still satisfy Rule 9(b) as long as the other circumstances of fraud are alleged with particularity and give rise to strong inferences of intent." *Anhui Konka Green Lighting Co. v.*

---

[17] Niagara makes a substantial separate argument that the term "100% Recyclable" was not, as pled, a material misrepresentation or omission of fact.  Although finding Niagara's use of that term not actionable under the GBL, the Court does not rely on this ground for dismissal in connection with the fraud claim.  That is because the Court's analysis under the GBL turned heavily on the Green Guides, which the GBL explicitly incorporates, but which the common law tort of fraud does not. *See Dreyer's Grand Ice Cream, Inc.*, 2022 WL 799563, at *8–9 (separately analyzing common law fraud claims from dismissing GBL claims); *Daniel*, 287 F. Supp. 3d at 198 (same).

*Green Logic LED Elec. Supply, Inc.*, No. 18 Civ. 12255 (PAE), 2019 WL 6498094, at *8

(S.D.N.Y. Dec. 3, 2019).  To do so, the pleadings must allege either "(a) facts to show that

defendants had both motive and opportunity to commit fraud, or (b) facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." *Chill v. Gen. Elec. Co.*, 101

F.3d 263, 267 (2d Cir. 1996).

The FAC fails to do either.

First, as to motive, the FAC alleges only that Niagara marketed the bottles to "capitalize

on consumer demand for 'green' products." *Id.* ¶¶ 15, 92.  That is insufficient to give rise to a

strong inference of fraudulent intent.  *See Chill*, 101 F.3d at 268 (general corporate profit motive

does not establish scienter); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12 Md. 2413

(RMM), 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("Frito-Lay's generalized motive

to satisfy consumers' desires, [and] increase sales and profits, 'does not support a strong

inference of fraudulent intent.'" (citation omitted)).

Second, the FAC does not plead facts supplying circumstantial evidence of conscious

misbehavior or recklessness.  It conclusorily alleges that Niagara's "false and misleading

representations and omissions were with knowledge of their falsehood."  FAC ¶ 91.  But it offers

literally no factual context or substantiation for this non-specific claim.  *Bardsley v. Nonni's

Foods LLC*, No. 20 Civ. 2979 (NSR), 2022 WL 814034, at *14 (S.D.N.Y. Mar. 16, 2022) ("The

simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a

defendants' 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'")

(citations omitted); *Valcarcel v. Ahold U.S.A., Inc.*, No. 21 Civ. 7821 (JSR), 2021 WL 6106209,

at *8 (S.D.N.Y. Dec. 22, 2021) (same); *but see Adelphia Recovery Trust v. Bank of Am., N.A.*,

624 F. Supp. 2d 292, 314 (S.D.N.Y. 2009) (fraudulent intent sufficiently alleged where plaintiff

pled facts including "emails, meetings, correspondence, and conduct" which provided strong circumstantial evidence that defendant was aware of fraud). That Niagara's challenged statement complies with the FTC's Green Guides, if anything, would to suggest that it was made without fraudulent intent.

The FAC accordingly does not plead facts sufficient to give rise to an inference of fraudulent intent. The Court therefore dismisses its common law fraud claim.

### C.      Breach of Express Warranty

Niagara next seeks dismissal of FAC's breach of express warranty claim for failure to (1) plausibly allege that its "100% Recyclable" claim would mislead a reasonable consumer; and (2) provide the seller timely notice of the alleged breach of express warranty. Def. Mem. at 23.

#### 1.      Applicable Legal Principles

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. UCC § 2-313(1)(a). "A successful breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty." *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018) (internal quotations and citations omitted). The N.Y. UCC requires that "[w]here a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. UCC § 2-607(3). In other words, "a buyer must provide the seller with timely notice of the alleged breach of warranty." *Lugones*, 440 F. Supp. 3d at 244 (quoting *Quinn*, 958 F. Supp. 2d at 44). "[T]he

sufficiency and timeliness of the notice is generally a question for the jury." *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362 (AGS), 1996 WL 274018, at *4 (S.D.N.Y. 1996).

Duchimaza contends that "[w]hether or not Plaintiff's notice was timely is a question of fact that cannot be decided on a motion to dismiss." Pl. Mem. at 22. That is wrong. Courts in this District routinely dismiss express warranty claims at the motion to dismiss stage where notice is insufficiently pled. *See, e.g.*, *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 112–13 (S.D.N.Y. 2021) (dismissing express warranty claim where plaintiff failed to allege that it served notice within a reasonable time); *Petrosino v. Stearn's Prods., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. 2018) (same).

## 2. Discussion

The Court's analysis focuses on Niagara's second argument, relating to the absence of timely notice. The FAC pleads that Duchimaza gave Niagara "timely notice" by sending it a letter of preliminary notice and a demand for corrective action in compliance with N.Y. UCC § 2-607(3)(a) on July 23, 2021, five days before the Complaint was filed. FAC ¶ 98.

Fatal to this claim, the FAC does not plead when Duchimaza learned of the alleged falsity of Niagara's "100% Recyclable" claim. When a plaintiff discovers or should have discovered an alleged breach "is the relevant trigger under New York law" with respect to the timeliness of an express warranty claim. *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 87 (S.D.N.Y. 2020); *Patellos*, 523 F. Supp. 3d at 534 ("[N]otice [must] be given promptly after the injury occurs (or, as here, is apparent)." (citation omitted)). "The question is not whether [plaintiff] gave defendant enough notice before filing suit; it is whether they gave reasonably prompt notice after [they] discover[ed] or should have discovered the alleged breach." *Tyman v. Pfizer, Inc.*, 16 Civ. 6941 (LTS) (BCM), 2017 WL 6988936, at *22–23 (S.D.N.Y. Dec. 27, 2017). If a plaintiff's complaint is "silent as to when they discovered or should have discovered the alleged

breach of warranty," a court cannot conclude notice was served "within a reasonable time" and remedies for a breach of express warranty are unavailable. *Id.* at 23.

The FAC is silent on this point. As Niagara notes, the FAC does not allege when or how Duchimaza determined that the "100% Recyclable" claim was misleading. Def. Reply at 9. Instead, it states only that Duchimaza "provided Defendant with timely notice" in her July 23, 2021 letter. FAC ¶ 98. Absent any allegation about when or how Duchimaza discovered the breach, it is impossible to determine non-speculatively that notice was timely. This requires dismissal of the FAC's breach of express warranty's claim. *See Mid Island LP v. Hess Corp.*, No. 650911/2013, 983 N.Y.S.2d 204, 2013 WL 6421281, at *4 (Sup. Ct., Dec. 2, 2013) (dismissing express warranty claim where complaint was "silent as to when the plaintiffs discovered the supposed breach, instead offering a legally conclusory statement that notice was given within a reasonable time thereof"); *Tyman*, 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017) ("Since plaintiffs fails to allege any facts that would permit the Court to conclude that they notified Pfizer of the alleged breaches within a reasonable time after discovering them, they are 'barred from any remedy.'" (citations omitted)).

### D.    Unjust Enrichment

Niagara next moves to dismiss the FAC's unjust enrichment claim as duplicative.

"Unjust enrichment is not a catchall cause of action to be used when others fail . . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, it "is available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* (emphasis added).

Here, the FAC does nothing even to attempt to meaningfully distinguish its unjust enrichment claim from its other claims. Defending this claim, Duchimaza argues only that "[i]t is premature to dismiss the unjust enrichment claim as duplicative at this stage." Pl. Opp. Mem. at 24. But courts routinely dismiss unjust enrichment claims as duplicative on a motion to dismiss where there is no basis to view them otherwise. *See, e.g.*, *Patellos*, 523 F. Supp. 3d at 538 (dismissing unjust enrichment claim as duplicative where "[p]laintiffs do not identify any distinguishing feature of the unjust enrichment claim warranting its survival."); *Corsello*, 18 N.Y.3d at 791 ("To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."); *Hesse*, 463 F. Supp. 3d at 473–74 ("[A]n unjust enrichment claim 'will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.'" (citations omitted)); *Ebin*, 2013 WL 6504547, at *7 (dismissing an unjust enrichment claim because "plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."); *Freedom Mortg. Corp. v. Tschernia*, No. 20 Civ. 1206 (AJN), 2021 WL 1163807, at *5–6 (S.D.N.Y. 2021) (granting a motion to dismiss a "duplicative" unjust enrichment claim).

The unjust enrichment claim here is clearly duplicative of its other claims. The FAC alleges as the basis of this claim Niagara's "retaining the revenues derived from Plaintiff's and Class members' purchases of the Products. Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the products were '100% Recyclable.'" FAC ¶ 106. These allegations effectively duplicate the FAC's (1) claim under GBL § 349 for deceptive acts and practices, *see id.* ¶¶ 66 ("Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that

the Products are '100% Recyclable,' when in fact the Products are not completely recyclable."),
71 ("As a result of Defendant's violations, Plaintiff and members of the Class have suffered
damages because they paid a price premium for the Products based on the materially misleading
representation that the Products were '100% Recyclable,' when in fact they are not."); (2) claim
under GBL § 350 for false advertising, *see id.* ¶ 82 ("As a result of Defendant's violations,
Plaintiff and members of the Class have suffered damages because they paid a price premium for
the Products based on the materially misleading representation that the Products were '100%
Recyclable,' when in fact they are not."); and (3) claim for fraud, *see id.* ¶¶ 88 ("Defendant has
fraudulently and deceptively led Plaintiff and Class members to believe that the Products are
'100% Recyclable.'"), 92 ("The false and misleading representations and omissions were made
by Defendant, upon which Plaintiff and members of the proposed Class reasonably and
justifiably relied, and were intended to induce and actually induced Plaintiff and members of the
proposed Class to purchase the Products.").

 Duchimaza argues, without elaboration, that the unjust enrichment claim should survive
as it "may still be viable even if other claims at law fail." Pl. Mem. at 23. In support, she cites
*U.S. Bank National Association v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 266 (S.D.N.Y. 2017), a
breach of contract case in which an unjust enrichment claim survived dismissal pending the
Court's determination of "the scope of the contractual obligations and . . . the conduct of the
parties." Pl. Mem. at 23. But *U.S. Bank* is readily distinguishable. The independent vitality of
plaintiff's claim of unjust enrichment turned on whether the parties' relationship was governed
by contract, an issue which could not be resolved on the pleadings. *See* 230 F. Supp. at 266; *see
also Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*, No. 22 Civ. 57 (PAE), 2022 WL
2905368, at *2 (S.D.N.Y. July 22, 2022). But this case does not involve a claim of a breach of

contract. And Duchimaza has not identified any comparable circumstance, in which the fate of a companion claim may dictate whether there is independent force to an unjust enrichment claim,

The Court accordingly dismisses the FAC's unjust enrichment claim as duplicative.

## CONCLUSION

For the foregoing reasons, the Court grants Niagara's motion to dismiss in full, with prejudice to each of her GBL, fraud, and unjust enrichment claims. Duchimaza's breach of express warranty claim, however, is dismissed without prejudice. That is because, on its first motion to dismiss, Niagara did not attack the original complaint on the ground on which the

Court dismissed that claim today, and, given the nature of its defect, that claim may be capable of successful repleading.[18]

If Duchimaza chooses to replead the breach of express warranty claim, the Court directs her, by August 12, 2022, to move to for leave to replead on that claim only, explaining why it can be salvaged.[19]  Niagara's opposition or other response will be due August 19, 2022.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 19 and 34.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: August 5, 2022
New York, New York

---

[18] Duchimaza has already availed herself of the opportunity to amend her complaint. *See* Dkt. 13–16.  After Niagara's original motion to dismiss was filed, the Court gave Duchimaza the choice to oppose the motions or to amend her complaint, and notified her that this would be her final opportunity to amend. *See* Dkt. 17.  Duchimaza chose to amend, but, as reflected herein, the amendment did not salvage any of her claims.  For the GBL, fraud, and unjust enrichment claims, Niagara's original motion to dismiss made the very arguments that have today prevailed; the Court therefore dismisses these claims with prejudice. *See, e.g., Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 517 (S.D.N.Y. 2021).  However, because Niagara's initial motion to dismiss the breach of warranty claim did not challenge the timeliness of Duchimaza's notice, and because it is possible that that claim is factually salvageable, the Court will give Duchimaza an opportunity to attempt to replead that one claim.  It may be, however, that this claim is unsalvageable; in opposing the motion to dismiss the FAC, Duchimaza did not seek leave to replead it or suggest that it could be successfully repled.

[19] This claim may be brought on an individual basis only.  "New York express warranty claims are *not* susceptible to class-wide treatment." *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 341 (S.D.N.Y. 2021), *leave to appeal denied*, No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) (emphasis in original). *See also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015).